**UNITED STATES of America, Appellant,**

v.

**Robert Joseph BECK.**

**UNITED STATES of America, Appellant,**

v.

**Robert William MURRAY.**

**Nos. 73-1086, 73-1087.**

United States Court of Appeals, Third Circuit.

Argued June 11, 1973.

Decided Aug. 8, 1973.

Certiorari Denied Jan. 7, 1974.
See 94 S.Ct. 873.

---

Carmen C. Nasuti, Asst. U. S. Atty., Philadelphia, Pa., for appellant.

Edward H. Weis, Defender Association of Philadelphia, Philadelphia, Pa., for appellees.

Before GIBBONS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal poses, first, the important threshold question of whether this court has jurisdiction to hear an appeal by the Government in a criminal prosecution and, second, whether the border search standard should be applied to the stop and search in this case.

The district court, 354 F.Supp. 604, for the Eastern District of Pennsylvania entered an order dated December 12, 1972, reversing judgments of the United States magistrate convicting and sentencing Robert Murray and Robert Beck

for theft in violation of 18 U.S.C. § 659. The case was tried on April 20, 1972, before United States Magistrate Naythons. The magistrate denied motions to suppress the evidence of the theft, and both defendants were adjudged guilty and sentenced to pay a fine of $100. They appealed the convictions, and the district court reversed on the ground that the evidence should have been suppressed. The district court remanded the case to magistrate Naythons for further proceedings consistent with its opinion.

We have concluded that we have jurisdiction and that the search was legal. We therefore reverse the order of the district court.

### I.  Jurisdiction

■ We recently reaffirmed the "well-settled rule that an appeal by the prosecution in a criminal case is not favored and must be based upon express statutory authority." Government of Virgin Islands v. Hamilton, 475 F.2d 529, 530 (3d Cir. 1973). The Government asserts as statutory authority for this appeal the Criminal Appeals Act, as amended in 1970, 18 U.S.C. § 3731, paragraph 2, providing:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been in jeopardy and before the verdict or finding on an indictment or information, if the United States Attorney certifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

This language on its face is enigmatic. It presents us with two interpretative questions: (1) What is the meaning of the clause "not made after the de-

fendant has been in jeopardy and before the verdict or finding on an indictment or information"; (2) Was the order entered by the district court a "suppression order." [1]

■ The Senate report on the 1970 amendment to the Criminal Appeals Act discloses that Congress intended to permit a Government appeal from any suppression order not made during the course of the trial. The report states:

> The amended Criminal Appeal[s] Act is intended to be liberally construed so as to effectuate its purpose of permitting the Government to appeal from dismissals of criminal prosecutions by district courts in all cases where the Constitution permits, and from all suppressions and exclusions of evidence in criminal proceedings, except those ordered during trial on an indictment or information.

Senate Report No. 91–1296, at 18. The only evident purpose in establishing the limited exception as to orders entered during trial was to prevent the suspension or interruption of ongoing trials. *See* Senate Report No. 91–1296, at pages 12–13, 36.

The clause in § 3731 "not made after the defendant has been in jeopardy and before the verdict or finding on an indictment or information" must be read against this legislative background. We therefore reject appellees' contention in their brief that an appeal lies only when the suppression order is made "before the verdict or finding on an indictment or information." Although the order in this case was entered after the magistrate's finding of guilt, an appeal, nonetheless, will lie since it does not involve a suspension or interruption of an ongoing trial.

■ Nor do we find merit in appellees' contention that the order of the district court was not a "suppression order" within the terms of the Act. Although section 3731 does not define

1. The United States Attorney did certify, in his notice of appeal, that the appeal was not taken for the purpose of delay and that the evidence is substantial proof of a fact material in the proceeding.

"suppression order," it does provide that "the provisions of this section shall be liberally construed to effectuate its purposes." The Senate report, moreover, states specifically, "The phrase 'suppressing or excluding evidence or requiring the return of seized property' should be read broadly, not narrowly as a similar statutory term has been interpreted."[2] The district court's decision did not, strictly speaking, "suppress" the evidence. The opinion states:

> Because the evidence should have been suppressed for the reasons set forth above, we reverse the convictions and sentences of defendants and remand to the Magistrate's Court for further proceedings consistent herewith.

The practical effect of the decision, however, is to suppress the evidence, since that is the only course left open to the magistrate.

Appellees argue that the decision appealed from is an order requiring a new trial before the magistrate. Conceding that the magistrate would be required to suppress the evidence at the new trial, they argue that the Government could then appeal the magistrate's order suppressing the evidence and obtain a rehearing de novo before the district court under Rule 5 of the Federal Rules of Procedure for the Trial of Minor Offenses before U. S. Magistrates. Then, if the district court sustained the magistrate a second time, the Government could appeal to this court.

Appellees' suggested procedure would exalt form over substance, waste valuable judicial time, and delay justice. The congressional mandate that a "suppres-

sion order" be liberally construed compels the conclusion that a district court decision requiring the suppression of evidence by a United States magistrate is an appealable order. Although it is unclear from the language of section 3731 whether Congress considered the unique relationship between magistrates and district courts, we think allowing jurisdiction over this appeal is in harmony with the congressional purpose to permit appeals except where an ongoing trial would be interrupted.

■■ The first paragraph of section 3731 reinforces our conclusion that we possess jurisdiction. It provides:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

This indicates that Congress desired to grant the Government the right to appeal in all cases where constitutionally permissible.[3] Since the only reason given for a deviation from that principle as to suppression orders was the desire not to disrupt ongoing trials, we believe that Congress intended to authorize appeals from suppression orders whenever consistent with the double jeopardy clause, except when entered during a trial. The double jeopardy clause is no bar to this appeal, for it has been long settled that this constitutional guarantee imposes no limitations upon the power to retry a defendant who seeks and procures reversal

2. S.Rep.No.91–1296, at 37 (citing as the improper, narrow reading, United States v. Greely, 134 U.S.App.D.C. 196, 413 F.2d 1103 (1969), which held that a denial of a Government motion to reopen a suppression hearing was not an "order, granting . . . a motion to suppress evidence").

3. *See generally* United States v. Pecora, No. 72–2173 (3d Cir., 1973), in which we interpreted this paragraph.

Section III of S.Rep.No.1296, dealing with the general effect of the amendment of section 3731, notes that it will:
> afford the Government the right of appeal from the dismissal of a criminal prosecution in all cases where the decision rendered by the district judge does not result in an acquittal after jeopardy. As a result, review of a lower court dismissal will be precluded only where the double jeopardy clause of the Constitution mandates it.

of his conviction. *See* North Carolina v. Pearce, 395 U.S. 711, 720, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

Government of Virgin Islands v. Hamilton, 475 F.2d 529 (3d Cir. 1973), relied upon by appellees, is inapposite, for in that case the appeal was not from an order suppressing evidence but from an order reversing the conviction of the defendants because of insufficient evidence. This was in effect a judgment of acquittal. On the other hand, in the case sub judice we have merely an appeal from a suppression order, not a judgment of acquittal on the general issue of guilt. Therefore, section 3731 authorizes this appeal, although it was inapplicable to the *Hamilton* case.

## II. *Legality of the Search*

The magistrate found that the search was a valid "border search" and, after trial, denied defendants' motions to suppress the evidence found in their duffle bags and car. On appeal, the district court agreed that this was a "border search" but that proximity to the border area was only one factor to be considered in determining the reasonableness of the search. It concluded that this search was not "reasonable under the circumstances." It stated that the test to be applied was whether "all the facts and circumstances established a reasonable basis for the officers to believe that contraband or goods subject to customs control were being introduced into the United States in a manner contrary to the customs laws." It thus appears that the district court applied the normal probable cause test for the legality of a search rather than the less stringent border search standard.

The magnitude of the smuggling and theft problems on our extensive international borders and numerous international airports and seaports has led to the formulation of special, pragmatic standards for judging the legality of stops and searches in or around such border areas or international port facilities. Instead of the usual requirement of probable cause to believe that an individual possesses contraband or that he has committed a crime demanded by the Fourth Amendment, a customs officer need only have a reasonable suspicion of illegal activity. *See* United States v. Glaziou, 402 F.2d 8, 12 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); United States v. McGlone, 394 F.2d 75, 78 (4th Cir. 1968); Thomas v. United States, 372 F. 2d 252, 254 (5th Cir. 1967). "A customs officer has the unique power to stop a person at an international entry point to conduct a 'border search' without having a search warrant and even having probable cause to believe the person has committed a crime." United States v. Glaziou, 402 F.2d at 12. Recognition of this diminished constitutional standard is reflected in 19 U.S.C. § 482, specifically authorizing customs officers to stop and search vehicles or persons in or on which they suspect there is merchandise illegally brought into the United States.[4] It does not, of course, exempt border searches from the constitutional test of reasonableness. Thomas v. United States, 372 F.2d 252, 254 (5th Cir. 1967); United States v. Glaziou, 402 F.2d at 12.

Practical considerations dictate a certain amount of elasticity in describing the area within which the border search standard is constitutionally appropriate, a determination dependent upon the particular facts of each case. The area has not been limited to the actual confines of an international port or to the border itself. On the contrary, it has been ex-

4. 19 U.S.C. § 482 provides in pertinent part:

> Any of the officers or persons authorized to board or search vessels may stop, search, and examine, . . . any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, . . . and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; . . .

panded to "a reasonable extended geographic area in the immediate vicinity of any entry point." *See* United States v. Glaziou, 402 F.2d at 13. The diminished standard, as the Supreme Court recently observed, "may in certain circumstances take place not only at the border itself, but at its functional equivalents as well. For example, searches at an established station near the border, at a point marking the confluence of two or more roads that extend from the border, might be functional equivalents of border searches." Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973) (dictum).

■ We think the facts of this case testified to by the searching officers justify the application of the "border search" standard. The search was performed by customs officers in surveillance of an international port of entry to detect narcotics smuggling. Customs Agents Harrison and Friedrich were, on April 16, 1972, watching Pier 80 in Philadelphia with the aid of binoculars from a distance of 100 to 150 yards when at approximately 4:15 P.M. they observed defendants leaving the pier carrying large, blue canvas bags. Both defendants were identified as watchmen because of their gray helmets. They knew from past experience that dock workers, including watchmen, carried such bags to transport lunch boxes, helmets and other articles needed while on the job. Beck's bag, however, appeared to them unduly heavy causing Beck's arm to hang straight rather than swing, his "belly" to appear "overlarged," and his body to lean to the right. They were observed entering an automobile in which Beck placed his bag on the floor and then, along with Murray, drove away from the pier. The agents pursued them immediately, stopping them one-half mile from the pier. Friedrich proceeded to open the trunk of the car, and Harrison asked Beck to open his bag in the back seat. Beck opened it and revealed fishing knives, fishing

reels, dinnerware, and other merchandise. At that point, Murray asked the agents, "Can't you give Mr. Beck a break?" The agents had no knowledge then that any goods had been stolen. Murray's bag was also opened upon request of the officers, and it revealed similar contents, in addition to a tape recorder. A later investigation revealed that the goods had been stolen from a bonded locker on the pier. It was conceded that these goods were part of a foreign shipment to the port.

Under these circumstances, we believe that the agents had reasonable grounds to suspect the defendants of illegal activity and that the reasonable suspicion standard was appropriate. The search was made immediately after defendants' departure from the pier and while they were still in the border area. Border searches much more removed in time and place have been approved. *See, e.g.,* Rodriguez-Gonzalez v. United States, 378 F.2d 256 (9th Cir. 1967) (20 miles from border, 15 hours after crossing); Murgia v. United States, 285 F.2d 14 (9th Cir. 1960) (1½ miles); Thomas v. United States, 372 F.2d 252 (5th Cir. 1967) (6 blocks; 1½ hours).

Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), in which the Supreme Court invalidated a border search, is distinguishable. There, the search of an automobile was conducted by a roving patrol "on a California road that lies at all points at least 20 miles north of the Mexican border." 413 U.S. at 273, 93 S.Ct. at 2539. Almeida-Sanchez was in fact 25 miles north of the border when he was stopped. He had not been observed leaving a border area or engaging in any suspicious conduct; the search was purely by chance. The Court indicated that it was concerned with the effect permitting such searches would have on the rights of wholly innocent drivers. 413 U.S. 266, 93 S.Ct. 2535. This case lays bare no such evil because: (1) the search was conducted upon reasonable suspicion; (2) the persons subjected to

the search had just left a port area; and (3) the search was conducted in close proximity to the port area.

The defendants are not immune from a border search because they were employees at the pier and not persons entering the country. Employees working in a border area are within the class of persons subject to a border search for contraband when leaving the area. United States v. Glaziou, 402 F.2d at 13; United States v. McGlone, 394 F.2d 75 (4th Cir. 1968). If employees were immune from its reach, they would be inviting, sitting targets for smugglers and thieves; and the effective enforcement of the customs laws, important to the economy and revenue of the country, would be transformed readily into shambles.

The order of the district court will be reversed and the case remanded for the entry of judgments consistent with this opinion.