**UNITED STATES of America,
Appellant,**

v.

**Robert M. KANE, Defendant, Appellee.**

**In re UNITED STATES of
America, Petitioner.**

**Nos. 80–1676, 80–1677.**

United States Court of Appeals,
First Circuit.

Argued Jan. 6, 1981.

Decided April 21, 1981.

Paul F. Healy, Jr., Asst. U. S. Atty., Deputy Chief, Crim. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellant.

Michael H. Riley, Boston, Mass., with whom John P. White, Jr., Stephen C. Maloney, and White, Inker, Aronson, Connelly & Norton, P. C., Boston, Mass., were on brief, for appellee.

Before MARKEY,* Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal and petition for mandamus arise from a single pending criminal action. Robert M. Kane, the defendant, was indicted on May 29, 1980 on two counts of mail fraud, 18 U.S.C. § 1341, and one count of

---

\* Chief Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

maliciously destroying a building by the use of explosives with personal injury resulting, 18 U.S.C. § 844(i). The grand jury charged that, between December 1971 and May 1976, Kane engaged in a scheme to defraud certain insurance companies by destroying his own buildings and then submitting insurance claims on them, and that in furtherance of that scheme he used the mails to transmit his statements of loss to the insurance companies. Kane filed pre-trial discovery motions seeking, among other things, transcripts of the testimony before the grand jury, names and addresses of the grand jury witnesses and of the government's trial witnesses, and a description of any other "bad acts" as to which the government proposed to offer evidence at trial, along with names and addresses of any witnesses who would testify to such acts. The government opposed these motions, but the magistrate allowed them after a hearing. The government moved for reconsideration, and a hearing was held in the district court. The court denied reconsideration on September 11, 1980, in an order which as later clarified included the following statement:

> "If the government fails to comply the court will then enter an order under Rule 16. It may prohibit the introduction of evidence not disclosed or it may enter such order as it deems just under the circumstances."

The government has filed an appeal from this order, asserting that the appeal is authorized under 18 U.S.C. § 3731. Recognizing, however, that section 3731 may be construed so as not to grant this court jurisdiction to consider an appeal of this nature, the government has also filed a "conditional" petition for a writ of mandamus that would require the district court to vacate its order and deny the defendant's motion for discovery. We first consider our jurisdiction to entertain this appeal under section 3731. Finding no jurisdiction for an appeal, we then consider whether the district court's order warrants exercise of our power to issue a writ of mandamus.

## I. *Appeal*

■ The government has no right of appeal in criminal cases except where a statute expressly grants such a right. *United States v. Martin Linen Supply*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1352, 51 L.Ed.2d 642 (1977); *United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975); *United States v. Sanges*, 144 U.S. 310, 318, 12 S.Ct. 609, 612, 36 L.Ed. 445 (1892). This rule is grounded upon policies which derive from the double jeopardy and speedy trial clauses of the Constitution. *See Martin Linen Supply*, 430 U.S. at 569, 97 S.Ct. at 1353; *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). *See also Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957).

The government believes that express authority for this appeal is to be found in 18 U.S.C. § 3731, paragraph two, as amended January 2, 1971, which provides,

> "An appeal by the United States shall lie to a court of appeals from a decision or order or a district court suppressing or excluding evidence of requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict of finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material to the proceeding."

Other paragraphs of section 3731 provide for government appeals from dismissal orders.

The order from which the present appeal was taken does not purport to suppress or exclude evidence. Rather it merely requires the disclosure of certain information. It also indicates, however, that should the government not comply, the court will impose some sanction under Fed.R.Crim.P. 16, which may but will not necessarily include prohibiting introduction of the evidence withheld. The government urges that this order "can fairly be characterized as an

order excluding evidence and such will be its practical effect," and that the order is therefore within the contemplation of section 3731.

The government relies on the fifth paragraph of section 3731, which provides that "the provisions of this section shall be liberally construed to effectuate its purposes." As evidence of congressional purpose, the government calls to our attention language in the legislative history to the effect that the statute would eliminate "technical distinctions in pleadings as limitations on appeals," and permit review of pre-trial discovery orders that go beyond the rules of criminal procedure.[1] The government points to the Supreme Court's comment in *United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1974), that "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *Accord United States v. Martin Linen Supply*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1976).

The comment in *Martin Linen Supply* and *Wilson* must be read in context, however. These cases involved questions of appeala-

bility of a post-trial judgment of acquittal and a post-trial dismissal of the indictment. The applicable provision in section 3731 was not, as here, the second paragraph, but its first paragraph which permits the government to appeal from a decision, judgment or order dismissing an indictment—with the single exception "that no appeal shall lie where the double jeopardy clause . . . prohibits further prosecution." Holding that appealability did not depend on any formal distinction between dismissal and acquittal, the Court construed section 3731 as permitting all such appeals consistent with the double jeopardy clause.[2] The Court proceeded in each case to consider the application of the constitutional barrier, finding the appeal barred in *Martin Linen* and permissible in *Wilson*.

In neither of these cases was the Court faced with application of section 3731 to appeals from interlocutory pre-trial rulings. Rather it was dealing with orders and judgments comparable to those which, in other contexts, would be appealable as final orders. The Court could thus reasonably view the question of appealability as regulated solely by the impact of the double jeopardy

---

1. These phrases, read in their context within the committee reports, are less than supportive of the government's position. Conference Report No. 91–1768, 91st Cong., 2d Sess. (1970), U.S.Code Cong. & Admin.News 1970, pp. 5842, 5848, describes the Conference Committee's changes in the statute as follows:

    "Technical distinctions in pleadings as limitations on appeals by the United States were eliminated and in their place the government was authorized to appeal any decision or order terminating a prosecution except an acquittal."

    Although "technical distinctions" might well be avoided in all contexts, the phrase appears in the reports in connection with orders terminating prosecutions, not those excluding evidence. Senate Report No. 91–1296, 91st Cong., 2d Sess. (1970), describes the problems with the old statute thus:

    "For example, if a court issues an order for discovery, believed to be unauthorized, a court will dismiss the indictment if the prosecutor refuses to comply. There is at present no way the prosecution can test the validity of that dismissal and the underlying order. If a court dismisses an indictment for lack of timely prosecution under the Federal Rules, without finding a denial of the constitutional

right to a speedy trial, the Government has no right to appeal. In view of the tendency of the courts to expand discovery rights, even beyond those recognized in the rules of criminal procedure, and a growing tendency by courts to dismiss indictments on such grounds, the Government in the future will be even more handicapped by its inability to appeal such dismissal."

    It is clear from this language that Congress did contemplate review of discovery orders, but not through appeal of the orders themselves; rather, Congress expressed the intention of allowing appeals of dismissals based on noncompliance with discovery orders with review of the underlying discovery orders in the context of such appeals.

2. The Court drew on language to that effect in the legislative history. In context that language appears to apply only to appeals of dismissal orders, and not to appeals of exclusion of evidence. The Senate report states that the bill " . . will assure that the United States may appeal from the dismissal of a criminal prosecution by a district court in all cases where the Constitution permits." S.Rep.No. 91–1296, 91st Cong., 2d Sess. (1970), at 2.

clause. The orders here in question are not final, however, but interlocutory. Were we to hold that Congress intended the second paragraph of section 3731 to authorize *any* appeal not barred by the Constitution, we would have to permit virtually unlimited government appeals from any and all interlocutory orders related to discovery or other preliminary matters. For reasons of fairness and judicial efficiency, orders of this type should not be appealable indiscriminately. If they were, defendants' rights to a speedy trial could be subverted, and the courts of appeal would be deluged.[3] Without some indication that the Court considered these implications of the proposed interpretation, we do not read the cited language in *Martin Linen* and *Wilson* as giving the government authority to appeal from decisions and orders of a kind different from those described in the second paragraph of section 3731.

We do, however, read section 3731 generally, and particularly the liberal construction provision of paragraph five, as dictating a practical, rather than formalistic, application. The courts of appeal have followed such an approach with regard to appeals brought under the second paragraph of section 3731. *E. g., United States v. Horwitz*, 622 F.2d 1101 (2d Cir.), *cert. denied,* —— U.S. ——, 101 S.Ct. 854, 66 L.Ed.2d 799 (1980); *United States v. Kehoe,* 516 F.2d 78 (5th Cir. 1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 313 (1976); *United States v. Battisti,* 486 F.2d 961 (6th Cir. 1973); *United States v. Beck,* 483 F.2d 203 (3d Cir. 1973), *cert. denied,* 414 U.S. 1132, 94 S.Ct. 873, 38 L.Ed.2d 757 (1974). The Second, Third and Sixth Circuits have applied this reasoning to hold that orders having the practical effect of excluding evidence, although not expressly

doing so, could be appealed under section 3731. *Horwitz, supra; United States v. Cannone,* 528 F.2d 296 (2d Cir. 1975); *Battisti, supra; Beck, supra.* We agree that section 3731 would authorize appeals from such orders. The question remains whether the order here does have that practical effect, as the orders in those cases were found to have.

In *United States v. Beck,* 483 F.2d at 203, the district court had ruled, after judgments of conviction by a magistrate, that certain evidence was the fruit of an illegal search and should have been suppressed. The district court therefore reversed the convictions and remanded the case to the magistrate for a new trial. On appeal from those orders, the Third Circuit reasoned that the district court's order had left the magistrate no choice but to suppress the evidence at the new trial, so that the order was in practical effect one suppressing evidence.

In *Battisti,* 486 F.2d at 961, the district court had issued an order, pursuant to rules adopted by the district court, directing the government to disclose to the defendant the names of government witnesses, and providing that the testimony of any undisclosed witnesses would be excluded at trial. On the government's petition for mandamus, the Sixth Circuit held that the order was, in substance, an order excluding evidence, and that it was therefore appealable under section 3731, so that mandamus was inappropriate. The court distinguished its earlier decision in *United States v. United States District Court for the Eastern District of Michigan,* 444 F.2d 651 (6th Cir. 1971), *aff'd,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), on the ground that the order in the earlier case had not provided for exclusion in case of noncompliance. *Id.,*

---

**3.** The legislative history reflects no congressional awareness that a large quantity of appeals would result from the statutory change. Rather, the following statement from the Senate report indicates that Congress expected no such result:

"The Department of Justice has advised the subcommittee that 'enactment of this bill would foster relatively few additional appeals per year—almost certainly less than fifty and quite possibly as few as ten or twenty. This would constitute only one or two percent of the total number of criminal appeals.'"

at 966.[4] In *United States District Court* the court of appeals had entertained a petition for mandamus, and, upon concluding that the district court's order was based on a correct ruling of law, denied the petition. In the Supreme Court, decision of the matter on a petition for mandamus rather than on appeal was not challenged.

In *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975), the district court had issued an order essentially identical to the order in *Battisti,* requiring disclosure of the names of government witnesses and providing for exclusion of testimony in case of noncompliance. Relying on *Battisti,* the court held the order appealable under section 3731. The Second Circuit elaborated further on the issue, and narrowed its position, in *United States v. Horwitz,* 622 F.2d 1101. There the district court had ordered the government to immunize defense witnesses, and had provided that, in case of noncompliance, it would exclude the testimony of immunized witnesses for the government. The government had "steadfastly maintained," both in the district court and on appeal, that it would not comply. The court therefore held the order appealable, observing that "the government, the defense, and the district court have embarked upon a collision course that will almost certainly result in the suppression of the . . . testimony." *Id.,* at 1105.

Comparing these cases with the present one, we note a critical distinction. The district court has not stated that it will exclude evidence if the government fails to comply. Rather than being a conditional order of exclusion, as were the orders in *Horwitz, Battisti,* and *Cannone,* the order in question is an unconditional direction which may be enforced by any of a variety of sanctions, only one of which is exclusion of evidence.[5]

■ There is the further point, too, that the government has not signalled whether it intends to comply with the district court's order or not. To be sure, it strenuously opposed the court's order, and understandably would like to secure appellate review of a discovery order that it considers unauthorized and excessive, whether it intends to comply or not. But section 3731 authorizes appeals from exclusion orders, not discovery orders. To show the court's order has the "practical effect" of excluding evidence, we think the government must go further and commit itself to a course of action which makes exclusion, practically speaking, inevitable.[6]

This situation is therefore unlike the "collision course" which the *Horwitz* court found "almost certain" to result in exclusion of evidence; here exclusion is only one of several outcomes which could result; other possibilities are compliance, imposition of some other sanction, such as contempt or a reprimand, or entry of "such other orders as [the court] deems just under the circumstances." Fed.R.Crim.P. 16(d)(2). We conclude that this order is not one having the practical effect of excluding evi-

S.Rep.No.91–1296, 91st Cong., 2d Sess. (1970), at 18–19.

**4.** *United States District Court* was decided under the pre-1971 version of section 3731, which allowed appeals only from orders suppressing evidence (*i. e.,* not from those excluding evidence). In *Battisti,* the court noted this statutory change as an additional ground for distinguishing the two cases.

**5.** This court recently held, in *United States v. Barletta,* 644 F.2d 50 at 57 (1981), that a district court is required to rule before trial on motions Ly the government to admit evidence, where the issue is "capable of determination without the trial of the general issues." It appears, therefore, that if the government sufficiently presents its intention not to comply

with the district court's order, *see infra,* and if the court finds the issue separable, the government may obtain a specific ruling on exclusion as a sanction before trial; if the court orders exclusion of evidence, the government will then be entitled to appeal under section 3731 and to obtain review of the discovery order.

**6.** We do not necessarily suggest that the government's commitment would have to remain binding after an unsuccessful appeal, but we think a commitment made in good faith as reflecting the government's intentions at the time is a necessary prerequisite to an appeal based on the theory that the court's threatened exclusion is, in practical effect, an exclusionary order.

dence, and is therefore not appealable under section 3731.

## II. *Mandamus*

Our power to issue writs of mandamus to the district courts derives from the All Writs Act, 28 U.S.C. § 1651(a), which provides:

"The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

The phrase "in aid of . . . jurisdictions," used in reference to a court of appeals, has been construed to include not only cases actually on appeal, but matters which could potentially lead to appeals. *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957); *Roche v. Evaporated Milk,* 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *In re Ellsberg,* 446 F.2d 954, 955 (1st Cir. 1971). In this case, an appeal could lie at some later stage of the proceedings from a judgment of conviction or from either pre-trial exclusion of evidence or dismissal of the indictment as a sanction for the government's noncompliance with the present order; alternatively, this court's potential appellate jurisdiction could be avoided by an order of exclusion after jeopardy attaches, which could lead to acquittal. It is therefore clear that we have jurisdiction to entertain the government's petition.

The propriety of mandamus under these circumstances is a more difficult matter. The Supreme Court has consistently held that mandamus is not a substitute for appeal, available merely to correct an error of law. *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 661, 98 S.Ct. 2552, 2556, 57 L.Ed.2d

504 (1978); *Will v. United States,* 389 U.S. 90, 97, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967); *DeBeers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 1132, 89 L.Ed. 1566 (1945); *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953); *Roche v. Evaporated Milk,* 319 U.S. 21, 25–30, 63 S.Ct. 938, 941–944, 87 L.Ed. 1185 (1943). *Accord In re Ellsberg,* 446 F.2d at 956; *In re United States,* 286 F.2d 556, 562 (1st Cir. 1961), *rev'd on other grounds sub nom. Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). This is so even though hardship may result from delay. *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). This rule carries particular importance where, as is the case here, Congress has chosen to deny us appellate jurisdiction; that congressional choice would be thwarted if we were to use our mandamus power to review an order of the district court under the same standards as we apply on appeal. *See Will v. United States,* 389 U.S. 90, 96–97 & n.5, 88 S.Ct. 269, 274–275 & n.5, 19 L.Ed.2d 305 (1967).

The Supreme Court observed in *Roche v. Evaporated Milk,* 319 U.S. at 26, 63 S.Ct. at 941, that "the traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." This standard has been quoted with approval in numerous cases since *Roche. Will v. Calvert,* 437 U.S. at 661, 98 S.Ct. at 2556; *Will v. United States,* 389 U.S. at 95, 88 S.Ct. at 273; *Bankers Life v. Holland,* 346 U.S. at 382,[7] 74 S.Ct. at

---

7. There is some precedent for the use of mandamus in an advisory capacity, to decide important issues of first impression, *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), or to correct the recurring error of a particular district court, *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), where the issue is not otherwise subject to review. *See In re Arvedon,* 523 F.2d 914 (1st Cir. 1975); *In re Ellsberg,* 446 F.2d 954 (1st Cir. 1971); Note, Supervisory and Advisory Mandamus Under the All

Writs Act, 86 Harv.L.Rev. 595 (1973). But the Supreme Court pointed out in *Will v. United States,* 389 U.S. at 98, 88 S.Ct. at 275 where these precedents were invoked, that "this Court has never approved the use of the writ to review an interlocutory procedural order in a criminal case . . . ." Especially since it is possible the underlying discovery questions may become the subject of a proper appeal under section 3731, we do not view this as one of those rare cases appropriate for exercise of our supervisory power.

147. In this case, no claim has been made that the district court has declined to perform its duty. Rather, the charge is that, with respect to grand jury minutes and witness lists, the order exceeds the power of the district court and is therefore, in the language of *DeBeers*, a "usurpation of power." *Id.*, 325 U.S. at 217, 65 S.Ct. at 1132.

We have considered at length the specific arguments made by the government against the legality of each of the district court's directives. We conclude that while strong contentions can be made in favor of the government's positions, the margin of district court error, if error there be, remains safely this side of "usurpation." That is, the debate between the parties concerning the court's power to compel disclosure of grand jury testimony and witness lists lies in the geography of legal error. If we assume—and we do not purport in any way to rule on the merits of the various controversies—that the judge is wrong on all points, his wrongness would be the kind of error, grounded on differing perceptions of where lines should be drawn, which would be grist for the appellate but not for the mandamus mill.

We accordingly conclude that mandamus is not an appropriate substitute for appeal.

*Appeal dismissed; the petition for mandamus is denied.*