**UNITED STATES of America**

v.

**Francis P. SALEMME, et al.**

**No. 94–10287–MLW.**

United States District Court,
D. Massachusetts.

June 13, 1997.

Fred M. Wyshak, Jr., U.S. Atty's Office, Strike Force, Boston, MA, for U.S.

Anthony M. Cardinale, Boston, MA, for Defendant Robert P. Deluca.

MaryEllen Kelleher, Law Office of Richard Egbert, Boston, MA, Anthony M. Cardinale, Boston, MA, for Defendant Francis P. Salemme, Sr.

Kenneth J. Fishman, Bailey, Fishman & Leonard, Boston, MA, Richard M. Egbert, Boston, MA, for Defendant Stephen J. Flemmi.

Michael C. Bourbeau, Robert A. George, Boston, MA, for defendant James M. Martorano.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA, Anthony M. Cardinale, Boston, MA, for Defendant John V. Martorano.

### MEMORANDUM AND ORDER

WOLF, District Judge.

The court has read the parties' June 12, 1997 submissions filed in response to the June 6, 1997 Order. Those submissions raise the following issues which should be considered, and to some extent addressed, in advance of the hearings which will commence on June 17, 1997, and will continue from day to day.

In his June 12, 1997 response to the June 6, 1997 Order the Acting Deputy Attorney General ("ADAG") suggests that if the court does not revoke its prior orders that the government confirm or deny whether Angelo "Sonny" Mercurio, Robert Donati, Kenneth Guarino, and/or Anthony St. Laurant were informants, "the Government believes that the appropriate remedy would be an order conditionally excluding intercepted communications until such time as the Government complies with the Court's Order of June 6, 1997." June 12, 1997 Affidavit of Seth P. Waxman, ¶ 5. The court is concerned, however, that there may not now be a shared conception of the nature and implications of a conditional exclusion order.

■ Neither an order granting a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), nor an order compelling discovery in a criminal case is ordinarily immediately appealable. *See* 18 U.S.C. § 3731; *United States v. Levasseur*, 619 F.Supp. 775, 784 (E.D.N.Y.1985)(The decision to hold a *Franks* hearing is not an appealable order under § 3731.). At this time, the court tentatively understands an appealable conditional order of exclusion to

be a pretrial decision holding that certain evidence will be excluded at trial because the government has declined to obey a court order to take some action prior to trial. *See, e.g., United States v. Parks*, 100 F.3d 1300, 1304–05 (7th Cir.1996)(allowing appeal based upon decision to exclude electronic surveillance for failure to obey order to transcribe tapes); *United States v. Presser*, 844 F.2d 1275, 1280 (6th Cir.1988)(allowing appeal based upon decision to exclude witness testimony for failure to obey order to disclose impeachment evidence before trial); *United States v. Horwitz*, 622 F.2d 1101, 1104–05 (allowing appeal based on decision to exclude witness testimony for failure to obey order to immunize defense witnesses), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 799 (1981); *see also* 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3919.3, at 616 (explaining conditional appeals).

■ This court does not, however, now understand a conditional exclusion order to be one that permits the government to take the position that it will not comply with a pretrial order; thus prompt an order of exclusion; take an appeal; and, if unsuccessful on appeal, unilaterally decide to moot the matter by complying with the original order. Rather, prior to any attempted appeal the government "must . . . commit itself to a course of action which makes exclusion, practically speaking, inevitable." *United States v. Kane*, 646 F.2d 4, 8 (1st Cir.1981); *see also United States v. McVeigh*, 106 F.3d 325, 330 n. 3 (10th Cir.1997)(following *Kane*). This does "not necessarily suggest that the government's commitment would have to remain binding after an unsuccessful appeal, but . . . a commitment made in good faith as reflecting the government's intentions at the time is a necessary prerequisite to an appeal based on the theory that the court's threatened exclusion is, in practical effect, an exclusionary order." *Kane*, 646 F.2d at 8, n. 6.

■ The ADAG's affidavit, however, does not appear to this court to meet this standard, although, if necessary, the Court of Appeals would be the ultimate arbiter of this issue. *See* 18 U.S.C. § 3731. More specifi-

cally, the ADAG states only that, "I have determined that the Government should not disclose *at this time* whether any of [the individuals at issue] has served as an informant for the Department of Justice at any time since 1967." June 12, 1997 Waxman Aff. ¶ 4 (emphasis added). This statement suggests that the ADAG may not now intend to suffer suppression of the intercepted communications at issue if allowed to appeal the June 6, 1997 Order and that appeal is unsuccessful. Thus, the court is ordering that the ADAG file a supplemental affidavit, or appear at the June 17, 1997 hearing, to address this issue.

In determining whether he can, in good faith, make the representations required to provoke a sanction of exclusion that may be appealable, the ADAG may wish to consider the following. If unsuccessful on appeal, the government would not necessarily be allowed to revise its decision not to disclose and cause the court to vacate the decision to exclude the intercepted communications at issue but, instead, conduct the *Franks* hearings that have now been ordered to determine whether suppression is required. *Kane*, 646 F.2d at 8. Defendants would undoubtedly oppose any such effort. The court cannot now predict how the issue would be resolved if ultimately presented.

■ In addition, the government is correct that it is "the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily impinge on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981). Such interests include the strong public interest in the trial of individuals charged with serious crimes and just punishment if they are fairly convicted. Thus, "in the typical case" the appropriate remedy for a refusal to confirm or deny the identity of an informant in connection with a *Franks* hearing would be suppression of the evidence at issue. *United States v. Russotti*, 746 F.2d 945, 948 (2d Cir.1984).

However, the Supreme Court has recognized that there may be atypical cases in which the more drastic remedy of dismissal is justified. In *Morrison*, in reversing an order of dismissal based on a violation of the Sixth Amendment, the Court stated that:

[W]e note that the record before us does not reveal a pattern of recurring violations by investigative officers that might warrant the imposition of a more extreme remedy in order to deter further lawlessness.

*Id.* at 366, n. 2, 101 S.Ct. at 669 n. 2. Similarly, in reversing a dismissal based on grand jury abuse, the Supreme Court stated that:

[W]e note that we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systemic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment.

*Bank of Nova Scotia v. United States*, 487 U.S. 250, 259, 108 S.Ct. 2369, 2376, 101 L.Ed.2d 228 (1988).

This court has previously anticipated that the defendants here would eventually assert that this case should be dismissed because it results from a pattern of government misconduct that makes this prosecution fundamentally unfair and which must be deterred. *See* May 22, 1997 Memorandum and Order Unsealed and Partially Unredacted June 6, 1997 (the "May 22, 1997 Memorandum and Order") at 24–25. Defendants' most recent submission confirms this intention. *See* Defendants' Response to Court's Order of June 6, 1997 Regarding Discovery at 1, n. 1.

The court has already tentatively found in this case that the motion to dismiss for grand jury abuse the alleged Racketeering Acts concerning the murders of the Bennett brothers appears to be meritorious. *See* May 22, 1997 Memorandum and Order at 47. In addition, the government "concedes that the defendants have made a substantial showing that Mercurio was a government informant and may have been in possession of information about the location of the so-called induction ceremony prior to the entry of the roving order by Judge Nelson on October 27, 1989." June 3, 1997 Government's Motion for Reconsideration of the Court's May 22, 1997 Order at 7–8. As this court has described previously, however, the

affidavit in support of the application for that Order treats Mercurio as a subject of the government's investigation and reports that a reliable informant stated that Mercurio set defendant Francis Salemme up to be shot, "took off" after that murder attempt failed, and was opposing the "peace settlement" between Joseph Russo and Salemme being proposed by Raymond J. Patriarca. *See* May 22, 1997 Memorandum and Order at 35. The defendants will undoubtedly argue that the government's refusal to disclose whether Mercurio was indeed an informant should cause the court to conclude that this information was correct and that the Federal Bureau of Investigation ("FBI") was implicated in Mercurio's misconduct.

In addition, the government has disclosed that James "Whitey" Bulger, as well as defendant Stephen Flemmi, was an FBI informant during much of the period it is now alleged that they were committing crimes, including comprising part of a RICO enterprise that was engaged in coordinating the activities of the Patriarca Family of La Cosa Nostra ("LCN") and the Winter Hill Gang, which Bulger and Flemmi allegedly led. The Boston FBI Chief Division Counsel, however, has concluded that Flemmi's FBI control agents at least tacitly authorized his participation in "LCN policymaking." November 15, 1995 Government's Response to Magistrate Judge Cohen's Order Dated August 23, 1995 at 6, n. 2; *see also* Affidavit of Paul E. Coffey, Esquire, dated November 13, 1995, filed *ex parte* and under seal, ¶ 7, n. 1 (same); May 22, 1997 Memorandum and Order at 24, n. 6. Accordingly, the defendants are likely to argue, among other things, that the failure to provide this information to the grand jury constitutes misconduct that should contribute to the dismissal of the charges in this case.

In any event, the forthcoming *Franks* hearing will determine whether the 1984–1985 electronic surveillance targeting Bulger and Flemmi must be suppressed. *See* May 22, 1997 Memorandum and Order at 8–26. It is foreseeable that if the government in effect agrees to the suppression of the communications intercepted in 1989 at 34 Guild Street and in 1991 at the Hilton Hotel it may be strengthening defendants' argument that there is a pattern of misconduct pertaining to this case that requires its dismissal.

In addition, even if litigation is averted on the merits of defendants' claims that the government failed to make the disclosures, relating to the availability of informants and to where electronic surveillance would be employed, that were required by 18 U.S.C. § 2518(1)(c) and (11)(a)(ii) in obtaining the authorization for roving surveillance used at 34 Guild Street, the same issues will undoubtedly recur in other matters. This court's decision not to suppress the Mafia induction ceremony intercepted at 34 Guild Street, *United States v. Ferrara,* 771 F.Supp. 1266 (D.Mass.1991), may have influenced the decision of Patriarca and his codefendants to plead guilty in that case. In a related case, the district court in Connecticut adopted this court's factual findings and analysis, admitted the intercepted Mafia induction ceremony in evidence at trial, and was affirmed on appeal when the defendants there were convicted. *See United States v. Bianco,* 998 F.2d 1112, 1119–20 (2d Cir.1993). The court is informed that the same evidence has been introduced in other LCN cases, including the successful prosecution of John Gotti. It is evident that if electronic surveillance of 34 Guild Street is suppressed in this case, many of those who were previously convicted or plead guilty will collaterally attack their convictions or pleas pursuant to 28 U.S.C. § 2255. *See, e.g.,* Ralph Ranalli, *Deal May Jeopardize Mob Cases,* Boston Herald, June 13, 1997, at 22 (Attorney for one of Patriarca's codefendants "said he would apply for a new trial if the wiretaps are thrown out."). Thus, unless the government intends to agree that the Mafia induction ceremony intercepted at 34 Guild Street should have been excluded in all of those other cases, it may wish to reconsider and decide to produce the information necessary for the previously ordered *Franks* hearing in this case.

Finally, the court notes that in its response to the June 6, 1997 Order the government for the first time describes the nature of the information that it submitted under seal, on June 3, 1997, for the court's *in camera* consideration on the condition that the court not disclose that information to the defendants or

the public, but, if necessary, order the government to do so. The government now indicates that the sealed submission states whether the four individuals at issue were informants. *See* Government's June 12, 1997 Memorandum of Law at 2. The court has not read the sealed submission for the reasons described in its June 10, 1997 Memorandum and Order. The question whether it should now do so will be addressed at the June 17, 1997 hearing. In the interests of efficiency, however, the court is accepting the government's suggestion, *id.* at 2, n. 1, and ordering the government to attempt to produce Mercurio, Guarino, and St. Laurant, on June 17, 1997, for questioning, if necessary, by the court and/or counsel.

Accordingly, it is hereby ORDERED that:

1. Acting Deputy Attorney General Seth A. Waxman shall, by 3:00 p.m. on June 16, 1997, file a supplementary affidavit stating whether he, on behalf of the Department of Justice, now intends to accept the exclusion as evidence at trial of the communications intercepted on October 29, 1989 at 34 Guild Street, and on December 11, 1991 at the Hilton Hotel, and any evidence derived from such electronic surveillance, *see* 18 U.S.C. § 2518(10)(a), rather than confirm or deny whether Mercurio, Donati, Guarino, and/or St. Laurant were informants if an appeal of the June 6, 1997 Order is permitted and that Order is affirmed. Alternatively, Mr. Waxman may appear and participate in the hearing commencing on June 17, 1997 at 9:30 a.m.

2. The Attorney General shall produce Mercurio for possible testimony at the hearing commencing on June 17, 1997 at 9:30 a.m.

3. Pursuant to Fed.R.Crim.P. 17, subpoenas shall issue for Kenneth Guarino and Anthony St. Laurant to appear for possible testimony at the hearing commencing on June 17, 1997 at 9:30 a.m., and the government shall attempt to have those subpoenas successfully served.

4. The affiant for the government's June 3, 1997 sealed submission shall also be available to testify, if necessary, at the hearing commencing on June 17, 1997 at 9:30 a.m.

5. The head of the Federal Bureau of Investigation's Office for Professional Re-

sponsibility is also invited, but not ordered, to attend the hearing commencing on June 17, 1997 at 9:30 a.m.

6. The June 17, 1997 hearing will continue from day to day until concluded.