UNITED STATES of America,
Appellant,

v.

John R. BARLETTA, Defendant,
Appellee.

In re UNITED STATES of
America, Petitioner.

Nos. 80–1220, 80–1456.

United States Court of Appeals,
First Circuit.

Argued and Submitted Dec. 4, 1980.

Decided March 17, 1981.

Amos Hugh Scott, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on briefs, for appellant.

Marshall D. Stein, Boston, Mass., with whom Julian Soshnick, Boston, Mass., was on briefs, for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The government seeks in this case to compel a district court to rule prior to the retrial of a criminal prosecution on a government motion to admit certain evidence at that retrial. The central issue raised by this effort, arising out of the complex interplay of 18 U.S.C. § 3731 and Rule 12 of the Federal Rules of Criminal Procedure, is whether and under what circumstances a district court may defer such a ruling until trial under Rule 12 without "adversely affecting" the government's right to appeal an adverse ruling under § 3731—a question that, although of potential significance in a broad range of cases, is apparently put directly in issue for the first time in these proceedings. We view this issue somewhat differently than did either the parties or the district court, and we remand the case to that court with instructions to enter the requested pretrial ruling.

Because this appeal presents a complex issue of first impression, involving a tension between the government's statutorily recognized right to appellate review of certain evidentiary rulings and the dictates of judicial economy, we have felt impelled to consider a number of alternative resolutions. For the guidance of readers, we indicate the following outline of our opinion. Part I sets forth the history of proceedings and rulings in this case to date. Part II addresses an issue of appellate jurisdiction. Part III contains our wide-ranging exploration of various alternatives and the basis for the resolution that seems to us appropriate. Part IV sets forth both the principles and their application that govern the instant case.

## I

The prosecution that has given rise to this dispute was at the outset relatively straightforward. The government indicted the defendant Barletta, a Massachusetts state tax examiner, on seventeen counts of conspiracy and mail fraud in connection with an alleged tax underpayment scheme. On the day before the trial was to begin, the defendant moved to suppress a tape recording of a conversation between Barletta and a government witness; with the consent of both parties, the district court deferred a ruling until trial in order to allow an accurate transcript to be prepared. The government offered the tape recording into evidence on the second day of trial, and after an *in camera* hearing the district court ordered it excluded. The court advanced two grounds for its ruling: first that the tape represented essentially an unsuccessful attempt by an informant to elicit an admission from the defendant, and second that despite its exculpatory character the tape contained certain references whose potential prejudice substantially outweighed any probative value the tape might have. The government filed a motion for reconsideration of that ruling at the close of its case, arguing that the court had erred as to matters of both fact and law; the district court denied the motion without elaboration. The trial subsequently ended in a mistrial when the jury was unable to reach a unanimous verdict.

From this point, however, the case took some rather unusual procedural twists. The government indicated its intent to seek a retrial, and simultaneously moved for a pretrial ruling on the admissibility of the contested recording. The government's motion, the exact wording of which was to become significant, was phrased as two distinct requests: "that the tape recording be admitted into evidence at the retrial of the case; and, further that the Court's ruling on this motion be made in advance of trial". As it had with the earlier motion for reconsideration, the district court endorsed the motion with the single word "Denied". The government then filed a notice of appeal, construing the court's order as a decision on the merits of its motion and seeking review of that decision. The defendant, finding the order ambiguous, moved in the district court for a "clarification" of whether the order denied the motion on the merits or merely deferred decision on it until trial. The government responded that in its view the court's order had to be construed as a denial on the merits for three reasons: first because the court's twice refusing to admit the recording at the first trial dictated such an inference; second because the very fact of a ruling on the motion suggested a grant of the request for a pretrial ruling; and third—and most importantly for this appeal—because Fed.R.Crim.P. 12(e) required the court to rule prior to trial. The district court subsequently issued an opinion in response to the motion for clarification, asserting that it had in its earlier order merely refused to issue a pretrial ruling and setting forth at length its reasons for concluding that it had authority to do so; the court's opinion has been reported at 492 F.Supp. 910. The government views that order as an impermissible attempt to divest this court of jurisdiction that had already properly attached, and maintains that the earlier order must still be viewed as a denial on the merits.

The parties have in the wake of these developments arrived at a rather curious posture before us. The government seeks to take a direct appeal from what it continues to deem an order excluding evidence, and has presented arguments in support of both the appealability of the district court's orders and the merits of its motion to admit. In the alternative, the government has argued that if the district court's order is not construed as a ruling on the merits of its motion, a writ of mandamus is appropriate to compel such a ruling prior to the pending retrial. The defendant asserts that the order must be construed as the district court subsequently indicated it should, and argues that an order deferring decision is not appealable; the defendant has also presented its arguments for exclusion of the evidence in the event that an appeal is held to lie. As to the mandamus petition, how-

ever, defendant's counsel have changed position: after arguing to the district court that it was not required to rule prior to trial, they have concluded on appeal that such a ruling is required, and agree with the government that mandamus is therefore appropriate. We remanded the case to the district court to allow it to take account of the defendant's change of position, whereupon that court, in another full opinion, reaffirmed its earlier decision. 500 F.Supp. 739.

## II

In light of these tangled proceedings, it is useful to restate the questions before us and clarify the relationship among them. The first question we face is whether an appeal lies from the district court's orders. If it does we must consider the merits of the motion to admit, while if it does not we must consider whether a writ of mandamus lies to compel the district court to rule prior to trial; each branch of the inquiry precludes the other. The parties, the district court and we are in agreement that no double jeopardy obstacles are presented by the prior mistrial, and that the government has complied with all other requirements for taking of an appeal. *See* 18 U.S.C. § 3731.[1]

■ We think the answer to the first question to be clear. The potentially applicable source of appellate jurisdiction, 18 U.S.C. § 3731, confers jurisdiction over "a decision or order of a district courts [court] suppressing or excluding evidence." The government contends that three orders provide the requisite evidentiary ruling, in combination if not separately: the two issued during the first trial, excluding the evidence and denying reconsideration, plus the one issued in response to the government's motion for a ruling prior to retrial. We think it plain that the rulings issued during the first trial, whatever their signifi-

cance as informal indicators of a likely ruling on retrial, are now moot and of no legal force or effect. Nor are we persuaded by the government's attempt to construe the court's decision on the motion for a pretrial ruling as a decision on the merits of the motion to admit. The order as initially issued was completely ambiguous—the government's motion requested two separate and distinct actions, and the court's succinct endorsement gave no clue as to which it addressed. Moreover, neither the fact that the court had ruled against admissibility in the prior trial nor the bare fact that it acted on the motion prior to retrial serves to constitute a decision as to admissibility on retrial. Finally, the government's effort to construe the district court's clarification order as an invalid attempt to divest us of jurisdiction seems entirely misguided. Precisely because the question of our jurisdiction over its initial order turned on the proper interpretation of that order, the district court's clarification of its own prior action was appropriately "in aid of the appeal", 9 *Moore's Federal Practice* ¶ 203.11 at 734 (2d ed. 1973), and was in accordance with Fed.R.App.P. 10(e). As a result, we conclude that no order suppressing or excluding evidence has been entered, that nothing warrants our "construing" the district court's actions so as to dictate such an order, and that no appeal may be taken.

## III

Thus we do not consider the merits of the government's motion to admit the evidence, but come instead to the important question posed by its mandamus petition: where the government has requested a pretrial ruling on such a motion, when if ever may a district court defer its ruling until trial? As noted, this question turns on the interrelation of the two applicable provisions, Fed.R.Crim.P. 12 and 18 U.S.C. § 3731, and but for the district court's opinions appears to be one of first impression in any court. The

1. The other requirements imposed by § 3731 are that the order be entered in a criminal proceeding, that the United States Attorney certify that the evidence at issue constitutes "substantial proof of a fact material to the

proceeding" and that "the appeal is not taken for purposes of delay", and that the appeal be taken within 30 days of the order and be "diligently prosecuted". 18 U.S.C. § 3731.

parties have in separate briefs asserted one view of this interaction, and the district court in two thoughtful opinions has held to a second. Having considered the relevant provisions, their legislative history, and the policies underlying them, we have reached a third view of their interaction. Because we consider the question presented to be significant as well as novel, we set forth the various alternative positions and our reasons for reaching our ultimate conclusion at some length.

We begin by parsing the text of Rule 12, which among other things sets forth the rules governing pretrial motions. First, 12(b) establishes two classes of such motions, those which may be raised before trial and those which must be so raised (or be waived, under 12(f), subject to the court's granting relief for cause). The permissive class comprises "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue"; the class of mandatory motions relevant here, 12(b)(3), consists of "[m]otions to suppress evidence." The second key portion of the Rule is the first sentence of 12(e), which provides that

"A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected."

Determining whether "a party's right to appeal is adversely affected" in turn triggers the second provision critical to the issue before us, 18 U.S.C. § 3731, whose relevant operative section states that

"An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [court] suppressing or excluding evidence . . . in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information . . . ."

The first question presented by these provisions is the scope of the terms "suppress" and "exclude". At least as used in 12(b), "suppress" has a rather definite and limited meaning, as explained by the Advisory Committee notes accompanying the Rule. Motions to suppress are described as "objections to evidence on the ground that it was illegally obtained", including "evidence obtained as a result of an illegal search" and "other forms of illegality such as the use of unconstitutional means to obtain a confession." Advisory Committee notes, Fed.R.Crim.P. 12(b)(3), foll. 18 U.S.C.A., citing 3 C. Wright, Federal Practice & Procedure: Criminal § 673 (1969). Put generally, then, suppression motions concern the "application of the exclusionary rule of evidence", or matters of " 'police conduct not immediately relevant to the question of guilt' ", id., quoting Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960); motions to exclude comprise all other evidentiary matters.

We turn to the interplay of 12(e) and § 3731 in light of this initial distinction. It is clear that defendants' motions to suppress, based on the exclusionary rule, are at the heart of the legislative purpose in providing government appeal rights. See, e. g., H.R.Rep. No. 603, 90th Cong., 1st Sess. (Aug. 24, 1967), discussed in United States v. Robinson, 593 F.2d 573, 575 (4th Cir. 1979) (purpose of government appeal provision was to foster consistent development of Fourth Amendment law and eliminate uncertainty which had arisen from conflicting district court rulings on search and seizure and confession issues); United States v. Greely, 413 F.2d 1103, 1104 (D.C.Cir.1969) ("overriding purpose" of provision limited to "difficult and unsettled area of suppression rulings"). Indeed, § 3731 as originally enacted limited the government's right to appeal to orders "suppressing evidence", a clear parallel to the scope of Rule 12(b)(3). Were a defendant able to delay such a motion until trial, he could prevent the government from appealing, thus frustrating the central purpose of § 3731. It is for this reason that motions to suppress—motions based on the exclusionary rule alone—must be made by a defendant prior to trial

or not at all, and for this reason as well that a district court ordinarily may not defer a ruling on a defendant's motion to suppress. We agree with the district court that such rulings and the government's ability to appeal them are at the core of 12(e).

With respect to all evidentiary matters involving questions other than the exclusionary rule, on the other hand, the situation is very different. A defendant has no obligation to move for a pretrial ruling on such issues and does not waive them by waiting until trial. The government, by contrast, has a clear incentive to seek a pretrial ruling on admissibility on such grounds, since it is unable to appeal an adverse ruling made once trial is underway. In addition, since the government ordinarily has no reason to seek a pretrial evidentiary ruling as to any exclusionary-rule issue, government motions to admit should be concerned exclusively with matters other than the exclusionary rule. These motions raise two distinct questions: first, what rulings does the government have a right to appeal under § 3731, and second, which if any of those may it compel the district court to rule on prior to trial under Rule 12? We consider these in order, beginning with several alternative views of what might constitute appealable orders.

First, appealability could depend on which party makes an evidentiary motion, a view responsive to Congress' central concern with defendants' motions and somewhat akin to that of the district court in this case. On this view, the critical factor is a perceived asymmetry between a grant of a defense motion to exclude and a denial of a government motion to admit: while the former definitively "excludes" evidence, the latter simply declines definitively to admit it at the time of the ruling.[2] We think this distinction ultimately unpersuasive. First, we think it fails to give due significance to the broad discretion retained by the district court in either case to modify or reverse pretrial rulings during trial if subsequent developments so warrant. *See United States v. St. Laurent*, 521 F.2d 506, 510–11 (1st Cir. 1975). In addition, we do not think that a motion to admit inherently requires a ruling on broader issues than a motion to exclude, anticipating all possible bars to admission; to the contrary, such a ruling would simply address those discrete and segregable issues apparent from the face of the motion and from the defendant's opposition thereto, if any. As a result, a ruling on a motion to admit is of the same effective force as a ruling on a motion to exclude, and we see no basis for distinguishing government appeal rights on the basis of which party files the pertinent motion.[3]

A second possible view of the appeal rights at issue focuses on the grounds determinative of an evidentiary issue, limiting such rights exclusively to matters involving the exclusionary rule. Since, as discussed above, the class of cases in which that rule is at issue should comprise precisely the same cases as those in which a defendant is the movant, this reading would effectuate the same central legislative emphasis on defendants' suppression motions. This reading also begins with the fact that § 3731 originally limited appellate rights to orders "suppressing evidence", and further

---

2. The district court was deeply and understandably concerned with the prospect of holding two full hearings on many such motions; we think this concern more appropriately addressed in relation to the government's ability to compel pretrial rulings than in relation to appeal rights, as discussed more fully below.

3. This conclusion finds support in the numerous cases in which courts have heard appeals from denials of government motions to admit, including one Supreme Court decision in which the fact that the government was the movant received no significant attention. *See United States v. Helstoski*, 442 U.S. 477, 487 n.6, 99 S.Ct. 2432, 2439 n.6, 61 L.Ed.2d 12 (1979); *United States v. Humphries*, 600 F.2d 1238 (9th Cir. 1979), *vacated on other grounds*, 445 U.S. 956, 100 S.Ct. 1640, 64 L.Ed.2d 231 (1980); *United States v. Day*, 591 F.2d 861 (D.C.Cir. 1978); *see generally United States v. Sisson*, 399 U.S. 267, 279 n.7, 90 S.Ct. 2117, 2124 n.7, 26 L.Ed.2d 608 (1970) ("in determining the question of appealability of the trial court's action [under § 3731, we must be guided] not by the name the court gave its decision but by what in legal effect it actually was"); *United States v. Flores*, 538 F.2d 939 (2d Cir. 1976) (same).

emphasizes that fact by interpreting the 1971 amendment adding the phrase "or excluding" as a reinforcement, not an expansion, of this central aim. The amendment was an explicit response to a case giving a skewed reading to the term "suppressing evidence", *United States v. Greely*, 413 F.2d 1103 (D.C.Cir.1969); *see United States v. Beck*, 483 F.2d 203, 205–06 (3d Cir. 1973), *quoting* S.Rep.No.91–1296, 91st Cong. 2d Sess. 18, 37 (1970), and what was criticized about *Greely* was not that it narrowed the government's appeal rights to exclusionary-rule issues but that it read an order which it seemed to agree "excluded" evidence on such grounds—i. e., an order denying reconsideration of an order suppressing evidence—as not technically being an order "suppressing" such evidence. On this reading of the amendment, the phrase "or excluding" is intended not to broaden the grounds for appealable rulings but to broaden the kinds of orders appealable within the bounds of the exclusionary rule.

Two sources of authority, however, argue against this view. The first is the extensive legislative history emphasizing that the section as a whole is to be liberally construed,[4] and that the phrase "order . . . suppressing or excluding evidence" in particular is to be "read broadly". *See* S.Rep. No.91–1296, *supra*, at 37, *quoted in United States v. Beck, supra*, 483 F.2d at 206; H.R. Conf.Rep.No.91–1768 at 21 (1970). Courts have consistently recognized this policy with respect to such orders as a significant legislative directive in a number of different contexts,[5] and we agree it is to be accorded substantial weight. While it is possible to reconcile this policy of liberal construction with the reading of "or excluding" under consideration—by asserting that although the act should be read very broadly within the context of exclusionary-rule issues, it should not be extended to other contexts—we are reluctant to endorse such a narrow reading in the absence of some indication that the general policy of liberal construction is not applicable in this context. In addition, we find a second and perhaps more conclusive refutation of this reading in the fact that the Supreme Court has, albeit without discussion, specifically permitted an appeal from an order that involved no exclusionary-rule issues, noting simply that "there was an order of a district court excluding evidence." *United States v. Helstoski*, 442 U.S. 477, 487 n.6, 99 S.Ct. 2432, 2439 n.6, 61 L.Ed.2d 12 (1979).[6] We think this view reflects a natural reading of the statute.

▮ Thus we consider a third possible view of government appeal rights, apparently the one proffered by the parties before us. On this reading, the phrase "or excluding" is indeed read broadly, to encompass any order which has the effect of denying admissibility to any evidence on any ground at the request of either party.

---

4. The Supreme Court has asserted with respect to § 3731 as a whole that "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Scott*, 437 U.S. 82, 84–85, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), *quoting United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975).

5. *See, e. g., United States v. Helstoski*, 576 F.2d 511, 520–21 (3d Cir. 1978), *aff'd*, 442 U.S. 477, 487 n.6, 99 S.Ct. 2432, 2439 n.6, 61 L.Ed.2d 12 (1974) (deciding appeal of ruling on effect of Speech and Debate Clause privilege that explicitly declined to address the admissibility of 23 specific categories of evidence); *United States v. Horwitz*, 622 F.2d 1101, 1104 (2d Cir. 1980) (holding that government may appeal order requiring government to grant immunity or have testimony excluded), *cert. denied*, —— U.S.

——, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981); *United States v. Day, supra*, 591 F.2d at 861 (allowing appeal of partial denial of government motion to admit "other crimes" evidence); *United States v. Abraham*, 541 F.2d 624, 626 (6th Cir. 1976) (allowing appeal of denial of government motion to determine the adequacy of procedures used for sealing intercepted recordings); *United States v. Flores*, 538 F.2d 939 (2d Cir. 1976) (allowing appeal of decision construing extradition order to prohibit proof of certain acts).

6. Numerous other appellate courts have also allowed such appeals without discussion of this issue. *See, e. g., United States v. Horwitz, supra*, 622 F.2d at 1104; *United States v. Day, supra*, 591 F.2d 861; *United States v. Battisti*, 486 F.2d 961 (6th Cir. 1973).

In addition, the trial court is said to be unable to defer ruling on a pretrial motion on such matters, because to do so would result in "a party's right to appeal [being] adversely affected". We agree with the first half of this formulation but not the second. As our discussion of the preceding alternatives has made clear, we reject each of the proffered constraints on the meaning of "exclude" as inconsistent with the basic spirit of the underlying legislative history, the interpretations of the provision by the Supreme Court and lower courts, and the ordinary understanding of the term in evidentiary matters. Thus we hold that the government may appeal from any pretrial evidentiary ruling.

■ At the same time, we do not agree that this view of appeal rights dictates the conclusion that a district court may be compelled to rule prior to trial on all such issues. We share in full the district court's concerns for crowded dockets and judicial economy, and we agree that many motions to exclude can be decided only on the basis of detailed consideration of other evidence to be introduced at trial. Requiring such motions to be decided prior to trial would thus often involve potentially lengthy pretrial evidentiary hearings and extensive duplication of the trial court's efforts. We do not believe that Congress, in giving the government the right to appeal from pretrial rulings on such issues, intended in addition to give it the power to force the trial court to issue them prior to trial where to do so would impose substantial burdens on the court. We think, moreover, that this clearly substantial policy finds direct textual support in the overall statutory scheme.

First, however, we consider an alternative view of the government's ability to compel pretrial rulings, which we take to be that endorsed by the district court and which we agree could logically serve to limit the government's ability to compel pretrial rulings consistent with these general principles. Like the first two views of appeal rights discussed above, this approach focuses on the fact that both Rule 12(e) and § 3731 have as their central concern enab-ling the government to appeal from suppression orders—from, that is, exclusions based on the exclusionary rule. Because of this overriding purpose, appeals based on exclusionary-rule issues would on this view stand on a different footing than do appeals from other issues. With respect to the former, the government's right to appeal is absolute, and the district court may defer no ruling on such an issue until trial without the consent of the government. But with respect to rulings on other grounds, the government's right to appeal is conditional upon the district court's deciding, in its discretion, to rule prior to trial—the government may appeal any pretrial order, but it may not bootstrap from that right to compel such a ruling in the first instance. The court's discretion, of course, must be exercised in light of the mandate of 12(e)—it must rule prior to trial unless it finds "good cause" to defer—but the government may in no instance compel the court to rule prior to trial. We conclude, however, that this position fails for two reasons. First, of course, it finds no support whatsoever in the text of the relevant provisions, and requires construction of a two-tiered system of appellate rights out of whole cloth. In addition, while it clearly accords weight to the legitimate policy of limiting the government's ability to compel pretrial hearings and rulings, we conclude that it does so excessively, at the undue expense of the policy of allowing the government to take an appeal where the burden on the district court would be slight or nonexistent.

■ We think the error of this approach to lie in its attempt to construct a limitation on pretrial rulings by working backward from the appeal rights granted by § 3731; we find the appropriate limitation instead in a provision addressed directly to the question of pretrial rulings, the phrase "capable of determination without the trial of the general issue" in Rule 12(b). This constraint serves to establish a threshold criterion, vesting discretion in the district court to decline to rule pretrial on many motions, but at the same time requiring it to rule in a limited class of cases. Specifically, a dis-

trict court must rule on any issue entirely segregable from the evidence to be presented at trial, but may in its discretion defer a ruling on any motion that requires trial of any nontrivial *part* of "the general issue"— that is, the presentation of any significant quantity of evidence relevant to the question of guilt or innocence—on the ground that it requires trial *of* the general issue for purposes of 12(b).[7] As a result, motions to admit would fall into one of three categories. First, for some questions raised by such motions, perhaps most dramatically the admissibility of co-conspirator hearsay,[8] a ruling on admissibility would require conducting virtually a complete mini-trial prior to the actual trial. In many other cases, the evidence necessary for determination of an evidentiary question would involve some overlap with the evidence to be presented at trial, ranging from trivial to substantial—from the presentation of an expert's credentials or the introduction of a document, for example, to the attempted rebuttal use of character evidence by the prosecution. Determining some such cases would require no "trial of the general issue" in any significant sense, while deciding others would require going further along the continuum toward a full trial. Finally, certain issues would turn on matters not at all part of the government's or the defendant's case—the existence of an attorney-client privilege or the satisfaction of a hearsay exception, for example—and thus would be entirely segregable from questions of guilt or innocence.

■ Accordingly, our reading of the relevant provisions leads us to the following three-part conclusion with respect to the government's ability to compel a pretrial ruling on an evidentiary matter. First, it excludes from pretrial determination any issues that require review of a substantially complete portion of the evidence to be introduced at trial.[9] At the other extreme, it requires pretrial determination of any evidentiary questions raised by the government that require no such review. Finally, where a decision requires more than a *de minimis* review of evidence relevant to the general issue but less than a substantially complete duplication of such evidence, the provision vests the timing of the decision in the sound discretion of the district court. In short, the phrase comprises both a self-executing qualitative test and a quantitative assessment committed to the district court's judgment. A district court faced with such a motion must first determine whether the evidentiary issue at stake turns on matters wholly apart from the proof in either party's case—presumably a task that

---

7. We note that this resolution, like the alternatives rejected above, gives greater weight to the central legislative concern with defendants' suppression motions. For a suppression motion must ordinarily be decided prior to trial even if such a determination requires substantial overlap with the evidence to be presented at trial—*a description of the facts constituting* probable cause for a search, for example. Were the same true in relation to a motion not raising exclusionary-rule issues, the court would have discretion whether to rule prior to trial or not. We think this accommodation both best recognizes the special place of suppression motions in the legislative scheme and best effectuates its intent as to all other evidentiary issues.

8. Under our holdings in *United States v. Petroziello*, 548 F.2d 20 (1st Cir. 1977), and *United States v. Ciampaglia*, 628 F.2d 632 (1st Cir. 1980), a district court must hear both the prosecution and the defense cases in full before making a final ruling on the admissibility of such evidence.

9. We note that the question whether an issue requires too *much* of a "trial of the general issue" to *permit* a district court to decide it prior to trial under 12(b) is unlikely ever to arise in connection with an evidentiary question, since the district court has no incentive to conduct the hearing necessary to such a determination. By contrast, where the court is considering an objection to the sufficiency of an indictment—the other context invoking this interplay between Rule 12 and § 3731—a district court could avoid a trial of a case by finding deficiencies derived from considering the general issue. Where the question has come up in that context, courts have given the phrase a reading symmetrical to ours, as imposing a ceiling on the maximum amount of evidence relevant to the "trial of the general issue" that may be considered prior to trial. *See, e. g., United States v. Knox*, 396 U.S. 77, 83 n.7, 90 S.Ct. 363, 367, n.7, 24 L.Ed.2d 275 (1969); *United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978).

could be accomplished relatively simply with the aid of the parties. If it does, and if the government would be otherwise able to take an appeal, the court must decide the motion prior to trial unless the government agrees to deferral. If an evidentiary issue depends to some extent on matters to be introduced at trial, the court must determine in its discretion whether it does so to a sufficient extent to warrant deferral. While we will review such determinations only for an abuse of discretion, we expect district judges to issue them fully cognizant of the strong policy supporting the facilitation of government appeals—although at the same time of course cognizant of the need to husband judicial resources wisely.

█ In sum, we may restate this holding, and tie together the three relevant provisions, in a single sentence: once a district court has decided that a motion may be raised prior to trial under 12(b)—that an issue is sufficiently "capable of determination without the trial of the general issue" —it may then find no "good cause" for deferring a ruling under 12(e), since to do so would adversely affect the government's right to appeal under § 3731. Cognizant that it is relatively unusual to empower a party to compel a district court to act, however, we emphasize the significant limitations that this holding places upon the government's ability to require a pretrial ruling. First, the government must certify, pursuant to § 3731, that the evidence at stake constitutes "substantial proof of a fact material to the proceedings", and that an appeal will not be taken for the purposes of delay. Second, the proof relevant to the issue must be almost entirely segregable from the evidence to be introduced at trial; while the court may rule where there is overlap between the two, it is not required to do so where the overlap is anything more than *de minimis*. Finally, the government must not have waived its right to a pretrial ruling, either explicitly or constructively— as, for example, by moving for a ruling on several complex evidentiary issues on the eve of a trial that has been scheduled months ahead, or by giving indications of acting in bad faith in any way.

## IV

We turn to the particular and relatively unique facts of the case before us in the light of these general principles. In doing so, we find certain aspects of the proceedings below to dictate an outcome that is in some respects the opposite of what these principles would dictate in the ordinary course.

As noted, the government's motion in this case seeks a ruling on the admissibility of a tape recording prior to a retrial. When the government sought to introduce the same recording at the first trial, the court held an *in camera* hearing and ordered the tape excluded. Its order set forth two grounds, each of which related entirely to the content of the tape; when the government moved for reconsideration at the close of its case, the court reaffirmed its decision on the same grounds. The government has represented that the evidence it will produce at the retrial will be essentially the same as that introduced at the first trial, and the defense has never indicated any intent to change its litigation strategy or its evidence on retrial. There is no suggestion that any witness has become unavailable or is likely to change a story on retrial, or indeed that the retrial will differ from the first trial in any respect whatsoever. Finally, of course, the content of the tape itself, which provided the sole basis for exclusion at the first trial, is certain not to differ at the retrial.

█ We think this combination of factors compel the conclusion that the evidentiary question at issue here is "capable of determination without the trial of the general issue" despite the fact that evidence relevant to it arguably overlaps at least in part with some of the proof to be introduced at trial. For while it would appear not to be an abuse of discretion for a district court to rule that the relevance or prejudicial effect of a particular item of evidence depended in a particular case on what other evidence was to be presented, we think the fact that the district court has already conducted the

entire "trial of the general issue" at the first trial to alter sharply the scope of its discretion with respect to the retrial. · Because the court need hear no additional evidence whatsoever to decide the government's motion, we find this case to be the same for these purposes as one involving an entirely segregable motion. The policy against requiring potentially burdensome pretrial hearings has no effect in such cases, while the policy supporting government appeal rights has full effect, and we conclude that a pretrial decision is necessary in such cases. We recognize that an exception to this principle might be justified if a district court found reason for a deferral despite having heard the relevant evidence at a prior trial, but we need not delineate what reasons would suffice for that purpose at this point since the district court in this case has advanced none.

■ We think the district court's failure to articulate specific reasons for a deferral to be dispositive of the question whether "good cause" for a deferral might exist in this case as well. Although we need not, strictly speaking, rule on this question— since our holding that the ruling sought is entirely capable of determination without a hearing precludes a finding of good cause for deferral under 12(e)—we address the issue both because it is so closely related to the questions we have discussed and because it is so certain to recur in future cases. Indeed, the district court's finding of "good cause" for a deferral in this situation relied on several generalized possibilities that might be present in any case: the volatility of a trial situation, the possibility of surprise evidence being introduced, the chance that a witness might become unavailable or alter his or her testimony, or the need for complex pretrial evidentiary hearings in some cases. But it is undisputed on the record before us that none of these dangers exist to any significant degree in this case; to the contrary, the parties are agreed that no change from the first trial is likely on retrial. The district court did discuss one factor specific to this case, the potential significance of evidence impeaching the witness through whom the

government would introduce the tape. Again, however, all evidence relating to this issue was fully presented at the first trial. We note simply that, to the extent that the showing necessary for deferral prior to a retrial is equal to that sufficient to justify deferral for good cause generally, we think the factors identified above insufficient.

In closing, we emphasize again that the policy expressed by Congress in favor of facilitating government appeals is a strong one, and one that may not lightly be cast aside. Were we to allow the bare possibility that surprise evidence might be introduced, the speculation that a witness might change a story, or the volatility of trial situations without more to constitute cause sufficient to warrant a deferral, the express mandate of Rule 12(e) would become an empty shell. While we have noted certain important limitations on the government's ability to compel pretrial rulings, a district court's reliance on insubstantial grounds for deferral is not one of them; we think a district court should set forth specific grounds supporting a finding of good cause for a deferral in any case in which the government seeks to take an appeal. The policy favoring such appeals is particularly strong where, as here, the district court has already heard all the evidence necessary to a decision—indeed, has already issued precisely the ruling sought in a prior proceeding—and need incur no undue burden in issuing such a ruling again. In such circumstances, we think a pretrial ruling necessary in the absence of extraordinary grounds for a deferral. Since there is no suggestion that any such grounds warrant deferral in this case, we conclude that a pretrial ruling on the government's motion is required. Although we ordinarily would vacate the existing judgment and remand the case for proper action by the district court, our dismissal of the appeal for lack of jurisdiction precludes such a disposition. We therefore have no alternative but to proceed under our mandamus authority and direct the district court to accomplish the same objective by vacating its order and by entering a pretrial ruling on the government's motion.