UNITED STATES of America,
Appellant,

v.

**Julian A. PENELLO, Appellee.**

No. 81–5126.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1981.

Decided Jan. 22, 1982.

Larry W. Shelton, Asst. U. S. Atty., Norfolk, Va. (Justin W. Williams, U. S. Atty., Alexandria, Va., on brief) for appellant.

George H. Bowers, Jr., Norfolk, Va. (Breeden, Howard & MacMillan, Norfolk, Va., on brief) and Stanley E. Sacks, Norfolk, Va. (Sacks, Sacks & Larkin, Norfolk, Va., on brief) for appellee.

Before WINTER, Chief Judge, and WIDENER and K. K. HALL, Circuit Judges.

PER CURIAM:

Julian Penello was indicted for four counts of tax evasion and four counts of subscribing to false income tax returns in violation of 26 U.S.C. § 7201 and § 7206(1). His first trial ended in a hung jury. Before the second trial, the district court held a suppression hearing to review the evidence and ordered the government to exclude the testimony of an IRS agent concerning a statement made by Penello. The government filed an appeal pursuant to 18 U.S.C. § 3731. We affirm.[1]

Penello operates a fishing boat in Norfolk, Virginia. The IRS began investigating him for unreported income for tax years 1972 through 1975. Penello concedes that he did not report certain amounts of income during the period, but contends that the money was put aside as a tax-exempt capital fund for use in purchasing a new engine for his boat.[2] The government counters that he never established a capital fund, and that he intended to evade taxes.

To prove intent, the government sought to introduce the testimony of two IRS agents who held a five-hour interview with the defendant. During this interview, Penello told the agents that he had sold

---

1. Even though neither party raised the question of jurisdiction, the court, during argument, inquired of counsel if such a question did exist. Neither party pressed the matter. We see no need to inquire further regarding jurisdiction.

2. The Capital Construction Fund is a tax deferral program established in 1970 which is designed to encourage fishermen to reinvest earnings in boats and equipment. The program is administered by the Commerce Department.

"shack fish"[3] to the fisheries for cash. The fisheries paid for these fish from a petty cash fund and required Penello to sign a voucher to acknowledge receipt of the proceeds. Penello told the agents that he occasionally signed fictitious names to these vouchers because he had heard that other fishermen had been getting into trouble for not reporting the income. However, he was never indicted for failure to report shack fish proceeds. The district court made a determination under Fed.R.E. 403 that the prejudicial effect of the evidence outweighed its probative value, and ordered it excluded.[4] The issue on appeal is whether the district court abused its discretion in making such a ruling.

The parties agree that the standard for overturning a Rule 403 determination is whether the district court acted in an "arbitrary or irrational" manner. *United States v. Masters*, 622 F.2d 83 (4th Cir. 1980). We see nothing irrational or arbitrary about the court's decision here. The government had only the agents' statement that Penello admitted to signing a fictitious name on shack fish vouchers. There was no proof that he actually received any money.[5] The fictitious signature is hardly probative of Penello's intent to avoid taxes if he did not even take the money. Given the certain prejudice the jury would attach to this testimony, we find that the district court properly excluded the evidence.

3. "Shack fish" are small fish and sea animals caught with the main catch.

4. The district court did not cite Rule 403 in its order. However, by the language of its ruling it is clear that the decision was based upon Rule 403.

5. On the contrary, there was testimony that shack fish proceeds were traditionally split among members of the crew, not including Penello.

1. 18 U.S.C. § 3731 authorizes the United States to appeal from a decision or order of a district court suppressing or excluding evidence "not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information ..." In *United States v. Barletta*, 644 F.2d 50 (1 Cir. 1981), the government moved to admit a tape recording which had been excluded at an earlier proceeding which resulted in a mistrial. The motion

Accordingly, the decision of the district court is affirmed.

AFFIRMED.

WINTER, Chief Judge, concurring:

While I concur in the opinion and the judgment, I am constrained to add a few words to explain my concurrence and to express my understanding of the scope of the majority's decision.

There is present in this case the nice jurisdictional question of whether, after a mistrial was granted and the accused was once placed in jeopardy, the government can appeal from the denial of a pretrial motion to admit certain evidence, when the motion is made after the mistrial was granted and before the new trial began and when that motion related to evidence which had been ruled inadmissible at the original trial. The question is neither noticed by the majority, notwithstanding a court's duty to be cognizant of its own jurisdiction, nor raised by the defendant. The government, however, is apparently aware that its right to appeal is fairly debatable, because it argues in its brief that it has a right to appeal under 18 U.S.C. § 3731 as applied in *United States v. Barletta*, 644 F.2d 50 (1 Cir. 1981).[1] It is not my purpose to indicate how I would decide the issue but merely to assert that the answer is not self-evident.[2]

was made before the second trial began. The district court declined to rule on the motion. Thus in *Barletta* the facts were essentially like those present here, but the issues were whether the government could appeal from an order of the district court staying decision on a pretrial evidentiary ruling and, if so, whether the district court could properly postpone a ruling on the admissibility of the evidence. Both questions were answered in the affirmative. Significantly, the issue of whether the government could appeal the merits of the ruling once made was not addressed. Therefore *Barletta* is not direct authority establishing the government's right to appeal here.

2. There can be little question that jeopardy attached during defendant's first trial. Thus it can be argued that, by its terms, the statute does not grant a right of appeal because the motion for an evidentiary ruling was not made before the defendant was placed in jeopardy as the statute requires.

I agree, however, that even if we have jurisdiction, the appeal is lacking in merit. Because of this conclusion and the further understanding that by deciding the case on the merits, the majority does not rule on the question of whether the order excluding evidence, under the facts of this case, is appealable, I join in the majority decision.[3]

---

**3.** To me, it is an acceptable ground of decision not to decide a debatable jurisdictional issue when the conclusion is inevitable that if jurisdiction exists, the appeal is otherwise lacking in merit. *See Richardson v. McFadden*, 563 F.2d 1130 (4 Cir. 1977) (in banc). *Firestone Tire & Rubber Company v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), only holds that when a court of appeals affirmatively concludes that it lacks jurisdiction, it ought not to reach the merits of the controversy.

