February 8, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1254

UNITED STATES,

Appellee,

v.

MIGUEL GOMEZ-BENABE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fuste, U.S. District Judge]

Before

Selya, Circuit Judge,

Aldrich, Senior Circuit Judge,

and Boyle,* District Judge.

Francisco M. Lopez-Romo with whom Edgar R. Vega Pabon was on

brief for appellant.
Warren Vazquez, Assistant United States Attorney, with whom

Charles E. Fitzwilliam, Acting United States Attorney, and Jose A.

Quiles, Assistant United States Attorney, were on brief for appellee.

February 5, 1993

*Of the District of Rhode Island, sitting by designation.

BOYLE, District Judge.

Miguel Gomez appeals from judgments of conviction for the

willful, knowing, and unlawful possession with intent to

distribute of a controlled substance, in violation of 21 U.S.C.

841(a)(1); and for importation of a controlled substance into the

customs territory of the United States from a place outside

thereof, in violation of 21 U.S.C. 952(a). At trial,

appellant, both at the end of the presentation of the

government's evidence and again after the jury reached its

verdict, moved for a judgment of acquittal pursuant to Fed. R.

Crim P. 29(c) arguing that evidence of pretrial photographic

identifications should have been suppressed at trial since the

identifications were either obtained as the fruit of an illegal

arrest or were so suggestive so as to violate appellant's due

process right. The district court denied appellant's motion

because of appellant's failure to bring his suppression motion

before trial as required by Fed. R. Crim. P. 12(b)(3) and (f).

The district court further ruled that the pretrial identification

procedures did not violate appellant's due process rights. After

careful consideration of the record, we affirm.

-2-
2

I. Background

On July 21, 1991, the vessel Eurocolombia arrived in

Puerto Rico at the Ponce municipal pier around 7:00 P.M.1 The

Eurocolombia had been under investigation by the United States

Customs Service ("Customs") for eight to nine months. As part of

an on-going investigation by Customs into narcotics smuggling at

the municipal pier in Ponce, Customs enforcement personnel were

in the practice of using confidential informants to provide

information regarding narcotics transactions. One such

confidential informant, a seaman aboard the Eurocolombia,

signalled Customs personnel that contraband was on board the ship

on this particular night. After seeing the signal, Customs Agent

Jose Ruiz boarded the Eurocolombia and contacted the confidential

informant.

The confidential informant showed agent Ruiz a locker

where a Colombian national named Alfonso had placed five one-kilo

packages of cocaine while the Eurocolombia was in port in

Colombia. Alfonso had given the confidential informant two

telephone numbers and instructed the confidential informant to

call the phone numbers when he arrived in Ponce, ask for "Pepe"

or "Jose", and arrange for the exchange of the drugs. Although

1Evidence was presented at trial that this vessel arrives in
Ponce just about every ten days.

-3-
3

initially frustrated by an out-of-order dockside phone, the

confidential informant eventually reached the Puerto Rico

contacts around 11:00 P.M. using agent Ruiz's cellular phone.

After a series of phone calls, the confidential informant was

instructed to meet "Jose" and a friend, who would be waiting in a

red Toyota four-by-four vehicle, at the Ponce pier gate to make

the exchange. Agent Ruiz already had arranged for surveillance

units to be placed in and around the municipal pier area.

The confidential informant taped the five kilos of cocaine

to his body and walked from the vessel, out of the pier area, and

onto Comercio Avenue where he made contact with the red Toyota.

Upon entering the vehicle, he found "Jose" in the driver's seat

and appellant in the front passenger seat. The vehicle moved to

a nearby cash-and-carry where they exchanged $10,000 for the

cocaine. After the exchange, the confidential informant exited

the vehicle, noted its license plate number, and returned to the

ship. At this point, the confidential informant had given no

description of the occupants of the Toyota to Customs personnel.

After the confidential informant left the Toyota, the

Customs enforcement operation unravelled. Customs surveillance

units were supposed to stop the vehicle after the transaction was

completed. The red Toyota, however, sped away from the area

before Customs agents had an opportunity to detain it. The

-4-
4

occupants of the Toyota led agent Ruiz and other Customs agents

on a high-speed chase through Ponce which ended in the town of

Santa Isabel.

Although agent Ruiz testified that the Customs agents

never lost sight of the Toyota, other evidence contradicts his

testimony. Apparently, at around 4:30 A.M., Customs agents

discovered the abandoned Toyota, which had glanced off a

telephone pole and had smashed into the wall of a funeral home

near the entrance to Santa Isabel. A search of the vehicle

turned up $15.90 in cash, two cellular phones, a revolver

holster, and a one-kilo package which field-tested positive for

cocaine. Witnesses at the scene told agent Ruiz and Carlos Ruiz,

another Customs agent, that the two occupants of the red Toyota

fled the vehicle and headed toward town.

While at the scene investigating the car accident, Puerto

Rico police officer Juan de Leon received a local police radio

report of a person acting strangely at a local bar-restaurant

about half a kilometer from the accident scene. Agent Ruiz and

officer de Leon went to the bar where the bar owner told them

that a certain stranger appeared nervous and was shaking. The

nervous stranger was later identified as appellant Miguel Gomez.

At this point, the officers still had no description of

the Toyota's occupants. Appellant did not appear injured and no

-5-
5

other evidence linked him to the accident vehicle. Nevertheless,

based on the suspect's nervousness and the fact that he was a

stranger, appellant was placed under arrest at around 5:15 A.M.

and was taken first to the scene of the accident and then to the

Customs enforcement office in Ponce.

Following defendant's arrest, two Customs officials

questioned the confidential informant aboard the Eurocolombia.

First, Customs official Manuel Zurita boarded the vessel and

obtained a description of the two occupants of the Toyota from

the confidential informant. The confidential informant testified

at trial that Zurita's visit took place between 6:00 and 6:30

A.M.. Shortly after the first visit, agent Ruiz went to the

Eurocolombia and showed the confidential informant two

photographs taken of the defendant at the Customs enforcement

office following his arrest. Ruiz asked if the person in the

photo was the driver of the red Toyota. The confidential

informant replied that the person in the photo was the passenger

and not the driver. At around 7:30 A.M., shortly after agent

Ruiz left the ship, the Eurocolombia departed the port of Ponce

with the confidential informant aboard.

Later that morning, at around 9:00 A.M., Officer de Leon

received a phone call from a Santa Isabel resident reporting the

presence of a stranger in the Paso Seco neighborhood. According

-6-
6

to the report, the stranger appeared nervous, wore torn clothes,

and had a wound on his forehead. Officer de Leon responded to

the report and arrested the stranger who was later identified as

Jose Gonzalez. Officer de Leon reported this arrest to agent

Ruiz. No evidence indicated that officer de Leon had received a

description of Gonzalez prior to his arrest.2 One week later,

on July 29, 1990, the remaining four kilos of cocaine were

discovered in the backyard of a home located about twenty-five

meters from where the accident had occurred.

On August 2, 1991, ten days after the arrest of the

appellant, the Eurocolombia returned to Ponce. At that time,

agent Ruiz again met with the confidential informant and showed

him two photo arrays each containing six photos. One array

contained a photo of appellant and the other contained a photo of

Jose Gonzalez. From the photo arrays, the confidential informant

identified Miguel Gomez and Jose Gonzalez as the occupants of the

red Toyota.

Before trial, appellant filed a motion for discovery

pursuant to Fed. R. Crim. P. 16 requesting: (1) names and

addresses of all informants which the government was going to use

at trial; (2) materials relating to offers of immunity or

leniency offered by the government to potential witnesses; and

2Jose Gonzalez pled guilty before the trial commenced.

-7-
7

(3) names of the enforcement agents that participated in the

surveillance at the Ponce pier. Appellant made no pretrial

request, however, to discover documents or photos relating to the

pretrial identification procedures within the possession of the

government pursuant to Fed. R. Crim. P. 16(a)(1)(C).3 At trial,

following the presentation of its case, the government renewed a

prior motion to admit two photo arrays into evidence.4

Appellant had failed to move to suppress this pretrial

identification evidence before trial as required by Fed. R. Crim.

P. 12(b)(3) and (f). As a result, it was not until the close of

the government's case-in-chief, when the prosecutor renewed his

motion to admit the photos, that Gomez first moved to suppress

the photos. After hearing the parties' arguments, the district

court admitted the photo arrays into evidence.5 Appellant

3The government gave open-file discovery to defendant. However,
the parties failed to confirm in writing what was contained in
the open-file discovery package. The defendant claims he did not
see the photos before trial yet the government claims they were
available.

4Twice during the government's case-in-chief the prosecutor
sought to admit the two photospreads into evidence. Both times
the court deferred ruling on their admissibility until after
appellant had the opportunity to cross-examine the witnesses.

5The confidential informant also made an in-court identification
of defendant at trial.

-8-
8

objected to the district court's ruling and the government rested

its case.

Following the government's case-in-chief, appellant moved for

a judgment of acquittal pursuant to Fed. R. Crim. P. 29.6 After

the district court denied this motion, the defense rested.

Following a jury verdict of guilty as to both counts of the

indictment, appellant renewed its Fed. R. Crim. P. 29 motion.

The district court denied this motion as well, United States v.

Gomez-Benabe, 781 F. Supp. 848 (D.P.R. 1991), and Miguel Gomez

appeals.

II. Discussion

Appellant claims that his constitutional rights were

violated because the photo arrays used for pretrial

identification were unduly suggestive and the product of an

illegal arrest. The record is clear, however, that appellant

failed to make a Rule 16 motion requesting discovery of the

pretrial identification evidence before trial. Rather, appellant

only sought pretrial discovery of the identity of the

6 Rule 29(c) provides, in its pertinent part:
(c) Motion after Discharge of Jury. If the jury returns a
verdict of guilty or is discharged without having returned a
verdict, a motion for judgment of acquittal may be made or
renewed within 7 days after the jury is discharged or within such
further time as the court may fix during the 7-day period. If a
verdict of guilty is returned the court may on such motion set
aside the verdict and enter judgment of acquittal.

-9-
9

confidential informant, the identities of the law enforcement

agents, and any exculpatory materials in the government's

possession. More importantly, appellant also failed to make a

Rule 12 motion to suppress the photo identifications before

trial. The relevant sections of Fed. R. Crim. P. 12 state:

(b) Pretrial Motions. Any defense, objection, or
Pretrial Motions.
request which is capable of determination without
the trial of the general issue may be raised before
trial by motion. Motions may be written or oral at
the discretion of the judge. The following must be

raised prior to trial:

* * * * * *
(3) Motions to suppress evidence; or
* * * * * *
(4) Requests for discovery under Rule 16 . . . .
* * * * * *
(f) Effect of Failure to Raise Defenses or
Effect of Failure to Raise Defenses or
Objections. Failure by a party to raise defenses or
Objections
objections or to make requests which must be made
prior to trial, at the time set by the court
pursuant to subdivision (c), or prior to any
extension thereof made by the court, shall
constitute waiver thereof, but the court for cause
shown may grant relief from the waiver.

Fed. R. Crim. P. 12(b)(3) & (f) (emphasis added). When, as here,

a defendant has failed to take full advantage of his Rule

16(a)(1)(C) discovery request options, his resulting ignorance of

a photo's existence does not excuse him from Rule 12's

requirement that motions to suppress be filed early.

The plain language of Fed. R. Crim. P. 12(b)(3) & (f)

establishes that Gomez waived his right to a suppression hearing

by failing to move for such a hearing before trial. See United

-10-
10

States v. Leal, 831 F.2d 7, 10 (1st Cir. 1987). A court may

grant relief from this waiver only "for cause shown." United

States v. Mendoza-Acevedo, 950 F.2d 1, 3 (1st Cir. 1991); United

States v. Gomez, 770 F.2d 251, 253-54 (1st Cir. 1985). As we

have stated before "the decision to grant or deny relief under

Fed. R. Crim. P. 12(f) is committed to the sound discretion of

the trial court and should not be disturbed on appeal absent a

showing of abuse." Gomez, 770 F.2d at 253. We find no such abuse

in this case.

Before trial, appellant did not challenge the

circumstances surrounding his arrest or the validity of the

pretrial photo identification. Appellant made no pretrial

suppression motion on either basis. As the district court

pointed out, it "had no idea that the pretrial identification

procedures might have been the fruits of an illegal arrest and

subject to the exclusionary rule or that they had been conducted

in such a way as to possibly violate defendant's due process

right" until evidence was presented at trial. United States v.

Gomez-Benabe, 781 F. Supp. 848, 854 (D.P.R. 1991).

As a matter of policy, suppression issues should be

considered before trial because "'interrupt[ing] the course of

the trial for such auxiliary inquiries impedes the momentum of

the main proceeding and breaks the continuity of the jury's

-11-
11

attention.'" Gomez, 770 F.2d at 253, quoting Nardone v. United

States, 308 U.S. 338, 342 (1939). The district judge's decision

furthers this sensible and longstanding policy.

Furthermore, there is no legitimate explanation for

appellant's delay in filing a suppression motion that would have

allowed the district court to grant relief from the waiver.7 See

United States v. Mendoza-Acevedo, 950 F.2d 1, 3 (1st Cir. 1991).

In short, the record is that appellant knew all there was to know

about the circumstances surrounding his arrest necessary to bring

a motion to suppress. We must agree with the district court's

conclusion that "[w]ithout some reason as to why a motion to

suppress was not filed, th[e] court c[ould] find no basis for not

applying the waiver rule.8" Gomez-Benabe, 781 F. Supp. at 854.

7At oral argument, appellant claimed that language in a certain
FBI report led appellant's trial counsel to believe that at least
one of the photo identifications had occurred prior to
appellant's arrest and served as a basis for probable cause to
make that arrest. Appellant argues that this report discouraged
his trial counsel from making a pretrial motion to suppress the
photo identification as the fruit of an illegal arrest. The FBI
report is not part of the appellate record. The district judge
observed that appellant failed to present "any legitimate
explanation for his failure to timely move to suppress the
evidence." United States v. Gomez-Benabe, 781 F. Supp. 848, 854

(D.P.R. 1991). In these circumstances, we may not take this
belated explanation into account on appeal.

8In fact, codefendant Jose Gonzalez apparently considered the
issue as a potential defense. In his motion to continue the
trial, codefendant's attorney advised the court of his intention
to look into the pretrial identification issue. Gonzalez,
however, pled guilty before filing any motions.

-12-
12

It is unnecessary to address the substantive aspects of

appellant's arguments concerning the legality of his arrest,

since appellant has totally failed to put the matter in issue.

We do not reach the merits of appellant's due process

claim that the pretrial photo identifications were unduly

suggestive. The district court construed First Circuit precedent

"as limiting [appellant's] waiver to challenging the

identification procedures on 'fruit of the poisonous tree'

grounds." Gomez-Benabe, 781 F. Supp. at 856. The district court

went on to consider the substance of appellant's due process

claim.9 It is not necessary to make this excursion.

In United States v. Barletta, we considered significant

the difference between motions to "suppress" and other motions to

merely "exclude" evidence. 644 F.2d 50, 54-55 (1st Cir. 1981).

Generally, motions to "suppress" deal with the operation of the

exclusionary rule or "'police conduct not immediately relevant to

the question of guilt.'" Id. at 54, quoting, Jones v. United

States, 362 U.S. 257, 264 (1960). The upshot of this distinction

is that motions to "suppress" evidence must be brought before

trial under Fed. R. Crim. P. 12(b)(3) while other motions to

"exclude" evidence may be brought after trial has commenced. Id.

9The district court ultimately decided that the pretrial photo
identification procedures were not unduly suggestive and denied
appellant's due process claim. Gomez-Benabe, 781 F. Supp. at 859.

-13-
13

at 54-55. The district court interpreted Barletta as removing

from the operation of the Fed. R. Crim. P. 12(f) waiver rule any

cases that do not implicate the exclusionary rule. Gomez-Benabe,

781 F. Supp. at 856. Pretrial photo identification procedures,

however, are "matters of police conduct not immediately relevant

to the question of guilt" and are therefore the proper subject of

a motion to "suppress" as defined in Barletta and governed by the

restrictions of Fed. R. Crim. P. 12(b)(3) & (f). See id.

Appellant's due process claims, therefore, have also been waived.

III. Conclusion

By failing to file a motion to suppress the photo

identifications before trial as required by Fed. R. Crim. P.

12(b)(3) & (f), appellant waived his right to challenge the

admission of the evidence during trial, unless the district court

found good cause shown. Here, the district judge did not abuse

his discretion in denying appellant relief from the waiver under

Fed. R. Crim. P. 12(f). Accordingly, the judgments of conviction

are affirmed.
affirmed

-14-
14