UNITED STATES of America

v.

George S. LUBELL, et al.,

No. CR. 01–10122–EFH.

United States District Court,
D. Massachusetts.

Feb. 6, 2004.

Benjamin D. Entine, Attorney at Law, Kenneth J. Fishman, Fishman, Ankner & Horstman, LLP, Boston, MA, Leo S. Fama, II, Everett, Peter C. Horstmann, Law Offices of Partridge, Ankner & Horstmann, LLP, Boston, MA, Martin D. Boudreau, Milton, Michael F. Natola, McBride & Natola, Leo T. Sorokin, Federal Defender's Office, Boston, MA, for George S. Lubell (1), Shane E. O'Hearn (2), Phillip E. Watson (3), Defendants.

Jeffrey Auerhahn, United States Attorney's Office, Boston, MA, for USA, Plaintiff.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

The government has filed a motion requesting a pre-trial ruling on the admissibility of certain hearsay testimony pursuant to Fed.R.Crim.P. 12(b)(3)(C) and 12(d). For the reasons set forth below, the Court exercises its discretion and declines to rule on the admissibility of this testimony prior to trial.

### I. *Background*

The government alleges that the Defendants Shane O'Hearn, George Lubell and Phillip Watson committed various crimes in connection with the following events. In early 1997, Watson's home was robbed of some 60 pounds of marijuana. Watson suspected that Zachary Dulac was responsible for the robbery and sought the assistance of Richard Maynard to recover the value of the stolen drugs. Maynard, who is now deceased, recruited O'Hearn and Lubell to help. On May 28, 1997, Maynard, O'Hearn and Lubell traveled from Massachusetts to Maine in search of Dulac. While in Maine, the three men obtained Dulac's address after they confronted one of Dulac's friends. On May 31, 1997, Maynard, O'Hearn and Lubell returned to Maine, found Dulac, beat him and stole his money.

At the grand jury proceedings, Anthony Gabriel Spera testified to incriminating statements made by O'Hearn and Watson to Spera. Included in this testimony were statements made before and after May 31, 1997. With regards to the post-May 31, 1997 statements, Spera testified that O'Hearn divulged details about the two trips to Maine, Dulac's beating and the quantity of money stolen from Dulac.

Spera also testified that Watson said "Richie [Maynard] and them guys, he didn't say exactly who, but he said, Richie and them guys got some money from Zack [Dulac]."

In April, 2001, the grand jury returned an indictment charging Lubell, O'Hearn and Watson with one count of conspiracy, 18 U.S.C. § 371, two counts of interstate travel in aid of racketeering, 18 U.S.C. § 1952, one count of conspiracy to commit extortion and robbery, 18 U.S.C. § 1951, and one count of using and carrying a firearm in a crime of violence, 18 U.S.C. § 924(c). The government moved in limine to admit the statements made by Watson and O'Hearn to Spera both before and after the May 31, 1997 beating of Dulac. The government argued that the post-May 31, 1997 statements were admissible as to Lubell pursuant to Fed.R.Evid. 804(b)(3) because the statements were against the interests of O'Hearn and Watson.

The Court granted the government's motion in limine, but upon reconsideration, vacated its ruling as to the admissibility of the post-May 31, 1997 statements. The Court declined to make a pre-trial ruling on the admissibility of the post-May 31, 1997 statements, choosing instead to rule during trial. It was the Court's judgment that rulings on the admissibility of evidence are usually more clearly made in the context of a trial where the offered evidence's relevance, probative value and prejudice can be more accurately weighed in relation to the other evidence in the case. The government then filed the pending motion, which seeks a pre-trial ruling on the admissibility of the post-May 31, 1997 statements. The government argues that the Court is *required* to rule on the admissibility of the statements prior to trial. The defendants argue that the timing of the ruling is within the Court's *discretion*. Resolving this dispute involves an unusual interplay between procedure and substance; an extended discussion is therefore necessary.

## II. *Discussion*

■ In criminal matters, district courts are required to rule pre-trial on evidentiary motions "in a limited class of cases." *United States v. Barletta*, 644 F.2d 50, 57 (1st Cir.1981). A ruling prior to trial on an evidentiary motion is only necessary when the evidence needed to decide the motion is "entirely segregable from questions of guilt or innocence." *Id.* at 58. In all other situations, the district court may postpone its ruling until trial. *Id.* This includes instances when the evidence necessary for ruling on the motion overlaps with the evidence that will be presented at trial. *Id.* The only qualification is that the overlap must not be "de minimis." *Id.* When the overlap is more than de minimis, the First Circuit "vests the timing of the decision in the sound discretion of the district court." *Id.*

■ At the trial of Lubell, the government intends to call Spera to testify about the out-of-court statements made by O'Hearn and Watson to Spera. These statements would normally be considered inadmissible hearsay as to Lubell. *See* Fed.R.Evid. 802. The government argues that Spera's testimony is nevertheless admissible under an exception to the hearsay rule for statements against interest.[1] *See*

---

1. Fed.R.Evid. 804(b)(3) provides an exception to the hearsay rule if a declarant is unavailable as a witness and the statement in question "was at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." O'Hearn and Watson are both criminal defendants in this case and are unavailable to testify. *See United States v. Innamorati,* 996 F.2d 456, 474 (1st Cir.1993).

Fed.R.Evid. 804(b)(3). What makes this case unusual is that Spera will testify to statements made by O'Hearn and Watson that not only implicate themselves, but also implicate their co-defendant, Lubell. The Supreme Court has described these types of statements as "inherently unreliable." *Lilly v. Virginia,* 527 U.S. 116, 131, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). This characterization is based largely on the fear that declarants may, in some situations, benefit from inculpating others and therefore have an incentive to fabricate. *See Williamson v. United States,* 512 U.S. 594, 601, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). As a result, such statements are admissible only when "corroborating circumstances" clearly indicate that the statements are trustworthy. *United States v. Barone,* 114 F.3d 1284, 1300 n. 10 (1st Cir.1997); Fed.R.Evid. 804(b)(3). In this context, corroboration does not refer to the credibility of the testifying witness or whether the witness' testimony conforms with other evidence in the case. *See Barone,* 114 F.3d at 1300. Rather, corroborating circumstances refers to "only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In short, it is the trustworthiness of the declarant, not the witness, that is important.

■ The pertinent question now pending is whether the evidence that this Court would use to determine trustworthiness overlaps with the evidence that would be presented at trial. Determining whether a declarant's statement is trustworthy is a "fact-intensive" question. *Lilly,* 527 U.S. at 136, 119 S.Ct. 1887. It is a question that requires "careful examination of all the circumstances surrounding the criminal activity involved." *Williamson,* 512 U.S. at 604, 114 S.Ct. 2431. For these reasons, the First Circuit has given district courts "a substantial degree of discretion"

in determining trustworthiness. *United States v. Millan,* 230 F.3d 431, 437 (1st Cir.2000) (citation and quotation marks omitted). The highly factual, contextual and discretionary nature of the trustworthiness inquiry strongly supports deferring this Court's evidentiary rulings until all the relevant facts are presented at trial. *See United States v. Jalbert,* 242 F.Supp.2d 44, 45–46 (D.Me.2003) (declining to rule pre-trial in part because resolving the motion was a "fact-intensive" inquiry that "must be made in light of the totality of the relevant circumstances").

■ Although district courts have "considerable leeway" in choosing which factors are used to determine trustworthiness, *United States v. Ventura–Melendez,* 275 F.3d 9, 16 (1st Cir.2001), this Court is guided by Supreme Court and First Circuit cases that have examined such factors as: whether the declarant was in custody at the time the statements were made; whether the declarant made exculpatory statements; whether the declarant was responding to leading questions by authorities; and whether the declarant was under the influence of alcohol. *See Lilly,* 527 U.S. at 139, 119 S.Ct. 1887; *Barone,* 114 F.3d at 1301 Another factor that is of particular importance here is whether the declarant made the statements to an ally or close relative. *See Barone,* 114 F.3d at 1301. Spera testified at the grand jury proceedings that he was friends with O'Hearn and Watson, and had known them since school. Spera also testified, however, that he was serving a 30–month sentence for drug crimes that he committed in cooperation with Dulac and another man whom Watson suspected of being involved in the marijuana robbery. In the Court's view, these facts raise questions about whether O'Hearn and Watson made the incriminating statements to a friend or foe. Such a distinction could be a relevant fac-

tor in determining the trustworthiness of the statements. If, for example, the statements were made to an adversary, then it is possible that the statements were fabrications intended to intimidate or coerce.

 The Court expects that the evidence at trial will shed considerable light on the relationships between O'Hearn, Watson and Spera, as well as the other individuals involved in this case. That information, in turn, will assist the Court in determining the trustworthiness of the hearsay statements offered by the government against Lubell. The Court therefore rules that the evidence needed to decide the government's pending motion and the evidence at trial will overlap in more than a de minimis manner. Under such circumstances, the decision of when to rule on the admissibility of the evidence is within this Court's discretion. *See Barletta,* 644 F.2d at 58.

III. *Conclusion*

The Court exercises its discretion and declines to rule prior to trial on the admissibility of the post-May 31, 1997 hearsay testimony. The Court will make its evidentiary rulings at trial.

SO ORDERED.